[No. 3,601.]

# KIMBALL *v*. RECLAMATION FUND COMMISSIONERS.

OBJECT OF CONGRESS IN GRANTING SWAMP LANDS TO STATES.—The object of the Federal Government in donating the swamp lands to the several States was to promote the speedy reclamation of the lands, and thus invite to them population and settlement, thereby opening new fields for industry and increasing the general prosperity.

OBLIGATIONS OF THE STATE IN ACCEPTING THE GRANT.—In accepting the grant of swamp lands, the State of California was bound to carry out in good faith the objects for which it was made. The Legislature has, at all times, recognized the binding force of this obligation.

PRESUMPTION AS TO PARTY CLAIMING TITLE TO SWAMP LAND.—A party claiming title to swamp lands under a patent from the State which conveys a title without conditions, is deemed to have acquired his title with a full

knowledge of the terms, conditions, and purposes of the grant, and to have accepted the title in subordination to the paramount right and duty of the State to cause the land to be reclaimed.

IDEM—COST OF RECLAMATION.— He is presumed to have taken the title with the consent that the Legislature might afterwards modify the system of reclamation, and that, if the proceeds of the sale should prove to be insufficient to accomplish the reclamation, he would submit to the imposition of such burdens on the land to effect the object as the Legislature might deem expedient.

ASSESSING SWAMP LANDS TO PAY COST OF RECLAMATION.—The Legislature may provide for dividing swamp lands into districts and having an estimate made of the cost of reclamation, and for the issuing of bonds and sale of the same to pay the expense of the reclamation, and the levy of an assessment on the lands in the district to pay the same, even after it has sold the land and given a patent which does not contain any conditions.

APPEAL from the District Court of the Tenth Judicial District, County of Sutter.

The law of California relating to swamp and overflowed lands placed the management of the same under the control of the Boards of Supervisors of the several counties, whose duty it was to divide the same into districts. In 1872 the Legislature passed an Act entitled "An Act to provide for funding the indebtedness of the reclamation and levee districts of the State." (Laws 1871–2, p. 835.) The Act provided that the Governor should, within thirty days after the passage of the same, "and every four years thereafter, appoint three persons who should constitute a Board, to be known as the Reclamation Fund Commissioners." That whenever, in any reclamation district, the Trustees, or owners of the land if there were no Trustees, or the engineer of any levee district, had reported or might thereafter report to the Board of Supervisors the plans, estimates, and cost of the work of reclamation therein, or when assessments had been levied in any district and paid in whole or in part, or warrants were outstanding drawn on the Fund, that the Board of Supervisors should publish a notice calling a meet-

ing of the land owners of the district, to vote on the question of the issuance of bonds for the estimated cost of reclamation, and also the question of issuing bonds to fund assessments already levied and paid and outstanding warrants, and that the vote of the majority in acreage of land owners should decide the question. That the Board of Supervisors should report the result to the " Reclamation Fund Commissioners," and the total amount for which the bonds were to be issued. That thereupon the " Reclamation Fund Commissioners " shall prepare bonds of the district for an amount not exceeding the sum reported, provided that no issue of bonds should exceed six dollars per acre, except in certain districts named, where the bonds might exceed that amount, and that the bonds should be payable twenty years after date, and bear interest at eight per cent per annum. That the Board of Supervisors of each county should appoint three "Assessment Commissioners," who should meet and determine the amount to be charged on each forty-acre tract (according to United States surveys) for the benefits received or to be received from the work of reclamation therein, so as to furnish a basis by which the land might be assessed to raise the sum necessary to pay the principal and interest on the bonds. That the "Assessment Commissioners " should report their action to the County Court, and the County Judge should fix a day for hearing and should hear objections to the report, and after his determination thereon the County Auditor should transmit a copy of the same, as corrected by the Judge, to the " Reclamation Fund Commissioners," who should, on the first Monday in March in each year thereafter, estimate the rate of assessment which it was necessary to levy to pay the interest to become due the ensuing year, and expenses of salaries of officers, etc., and that this rate should be levied annually for the first ten years, but for the ensuing ten years an additional rate should be levied which would pay a percentage on the principal, which

was so fixed that at the end of the twenty years the principal would be paid.    That the "Reclamation Fund Commissioners " should transmit a copy of this to the Auditor of each county, and direct him to prepare a copy of the same and enter thereon, opposite each tract of land, the amount of assessment to be collected from the owner of the same, and file it with the County Treasurer, and that the assessment should be then due and payable and become a lien on each tract of land, and the Treasurer should publish a notice that the assessment was due and payable, and if not paid before the first Monday in September the same would become delinquent and be returned to the Tax Collector for collection.

Under the provisions of this Act the Governor, before the 1st day of May, 1872, appointed the defendants, Charles F. Reed, A. S. Bender, and E. B. Strout, the "Reclamation Fund Commissioners."

The plaintiff made his application to purchase the land mentioned in the opinion on the 26th day of August, 1863, and the Governor of the State issued a patent to him for the same on the 8th day of June, 1864.    On the —— day of February, 1871, W. H. Parks, S. J. Stabler, George D. Roberts, and others, filed a petition with the Board of Supervisors of Sutter County, representing that they were the holders of patents and certificates of purchase for more than one half of a tract of land in Sutter County containing about one hundred thousand acres, and asking the Board to form the same into a levee district under an Act of the Legislature entitled "an Act to provide for the protection of certain lands in the County of Sutter from overflow," approved March 25th, 1868.    On the 11th day of March, 1871, the said Board, upon a hearing of the petition, made the order prayed for and named the district "Levee District No. 5." The plaintiff's land was in this district.    After said eleventh day of March and during the year 1871, said Board of Supervisors caused levees to be built in and around said "Dis-

trict No. 5," and in payment therefor issued warrants to an amount exceeding one hundred and forty-four thousand dollars, which were outstanding and unpaid when this suit was commenced. On the 8th day of May, 1872, said Board of Supervisors published a notice for the owners of land in "District No. 5" to meet on the 3d day of June, 1872, and vote whether the outstanding indebtedness and estimated cost of reclamation of "District No. 5" should be funded under said Act of 1872. In pursuance of said notice the owners of seventy thousand and eighty-two acres of the land met and voted to issue bonds for the indebtedness, one hundred and forty-four thousand four hundred and seventy-eight dollars, and the estimated cost of reclamation, four hundred and seventy-three thousand five hundred and six dollars, making six hundred and seventeen thousand nine hundred and eighty-four dollars—a sum not exceeding six dollars per acre of the land in the district.

The other facts are stated in the opinion.

*W. C. Belcher*, for Appellant.

By the Act of April 27th, 1863, the Legislature made provision for the sale of the swamp and overflowed lands of the State, without condition. Under the provisions of that Act the State conveyed the lands involved in this action to the plaintiff in fee. It was competent for the State, prior to the sale, to have imposed burdens upon the land, or to have made the sale upon such conditions, as to reclamation, as it might have desired; but having sold and conveyed unconditionally, it is no more within the authority of the State than it would be of a private proprietor to make conditions of sale, or impose burdens on the land sold. (*Fletcher* v. *Peck*, 6 Cranch, 135–9; *Montgomery* v. *Kasson*, 16 Cal. 194; *Grogan* v. *San Francisco*, 18 Cal. 612; *Terrett* v. *Taylor*, 6 Cranch, 43; *Pawlet* v. *Clark*, 9 Cranch, 335; *Lowry* v.

*Francis*, 2 Yerg. 534; *Dartmouth College* v. *Woodward*, 4 Wheat. 519.)

An agreement on the part of the State that certain property, rights, or franchises shall be exempt from taxation, or taxed at certain rates only, binds the State. (*Ohio Life and Trust Co.* v. *Debolt*, 16 How. 416; *Dodge* v. *Woolsey*, 18 How. 331; *McGee* v. *Mathis*, 4 Wal. 143; *Home of the Friendless* v. *Rouse*, 8 Wal. 430.)

All the land in Levee District Number Five is owned by private proprietors, and more than seven tenths of it by twelve persons, who are seeking, through the defendants, to impose a burden, amounting to more than fifteen dollars per acre, upon the plaintiff's land, for their private benefit. In the exercise of its right of eminent domain, the State, upon payment of just compensation, may take the property of an individual for a public use, but it cannot take it for a private use. (*Sharpless* v. *Mayor, etc., of Philadelphia*, 21 Pa. St. 168; *Bloodgood* v. *Mohawk and Hudson River Railroad*, 18 Wend. 16, 56; *In the Matter of Albany Street*, 11 Wend. 151; *Embury* v. *Connor*, 3 Coms. 516, 517; *City of Covington* v. *Southgate*, 15 B. Mon. 491; *Woodruff* v. *Fisher*, 17 Barb. 224; *Taylor* v. *Porter*, 4 Hill, 147; Code Napoleon, B. II, Title II, 545.)

If the plaintiff's land can be lawfully assessed for the benefit of the twelve men who own the majority of acres in the district, it could be so assessed for the benefit of one man, if he owned all the land in the district, except plaintiff's one hundred and sixty acres. Taxation not levied upon the principles upon which the right to tax is based is an unlawful appropriation of private property.

The issuing of bonds of Levee District Number Five by the defendants will create a burden and lien upon the plaintiff's land, and will be in effect a taking of his land for the benefit of the twelve persons who voted for funding (Secs. 17, 18; *Concord R. R.* v. *Greely*, 17 N. H. 55, 56; *Sharpless*

v. *Philadelphia*, 21 Pa. St. 168; *Covington* v. *Southgate*, 15 B.
Mon. 498; *Ryerson* v. *Utley*, 16 Mich. 269; *State* v. *Haben*,
22 Wis. 660; *Sanborn* v. *Rice*, 9 Minn. 273.)

The Act of March 30th, 1872, is unconstitutional and void,
because:

First—The State having sold the land unconditionally, im-
pairs the obligation of its contract when it seeks to impose
burdens upon the land and thereby cloud plaintiff's title
thereto, and deprive him of its enjoyment. (*Fletcher* v. *Peck*,
6 Cranch, 135; *Dash* v. *Van Kleek*, 7 Johns. 505, 506; *Coffin*
v. *Rich*, 45 Maine, 514; *Kennebec Purchase* v. *Laboree*, 2
Greenl. 291; *Pennsylvania R. R. Co.* v. *Reblet*, 66 Pa. St. 164.)

Second—The issuing of bonds and collection of the prin-
cipal and interest thereof under the provisions of the Act,
is a taking of the property of one private proprietor for the
benefit of other private proprietors, and not for a public use
and a taking without compensation. (*Bloodgood* v. *Mohawk
and Hudson River Railroad Co.*, 18 Wend. 56; *Embury* v.
*Connor*, 3 Comst. 516; *Woodruff* v. *Fisher*, 17 Barb. 224;
*Sharpless* v. *Philadelphia*, 21 Pa. St. 168; *Broadhead* v. *Mil-
waukie*, 19 Wis. 652; *Cypress Pond Draining Co.* v. *Hooper*,
2 Met., Ky. 350; *Morford* v. *Unger*, 8 Iowa, 92.)

Third—The Act imposes upon the land the burden of pay-
ing the salaries of the Reclamation Fund Commissioners
and their Secretary, and the expenses of their office.

Fourth—The Act provides for the assessment of the lands
of the district by Assessment Commissioners appointed by
the Board of Supervisors, and not elected by the people of
the district. (*People* v. *Hastings*, 29 Cal. 449.)

Fifth—The assessment provided for by the Act is of the
lands and not of all the property of the district.

Sixth—But one valuation or assessment is provided for,
and that is to continue as the valuation for the levy of assess-
ments for a period of twenty years, and until the full pay-
ment of the bonds.

Seventh—The assessment of said lands is by said Act directed to be made according to benefits received or to be received, and not according to value of lands, and to be made by said Assessment Commissioners at such place of meeting as they select without viewing the land. . (*Taylor* v. *Palmer,* 31 Cal. 240; *Weeks* v. *Milwaukie,* 10 Wis. 258; *Municipality No.* 2 v. *White,* 9 La. An. 454.)

Eighth—The Legislature has no authority under the Constitution to levy any assessment to be apportioned according to benefits, or to authorize such assessments to be levied, except in the case of cities and incorporated villages. (Constitution, Art. IV, Sec. 37; Constitution, Art. XI, Sec. 13; *Taylor* v. *Palmer,* 31 Cal. 240.)

*S. W. Sanderson,* for Respondents.

The purchase of the land by appellant, under the Act of April 27th, 1863, did not vest the title in him discharged of any burden which the State had or might thereafter impose for the purpose of reclamation. (Stats. 1863, p. 591.)

The land was granted to the State for the purpose of enabling her to reclaim it, and upon the condition "that the proceeds thereof, whether from sale or by direct appropriation in kind should be applied exclusively, so far as necessary, to the purposes of reclamation by means of drains, levees," etc. (9 U. S. Stats. at Large, 519.)

Pursuant to this condition the Legislature, in 1858, passed an Act providing for the sale and reclamation of the lands so granted, fixing the price at one dollar per acre. (Stats. 1858, p. 198.)

This Act was amended in 1859, but the price remained the same. (Stats. 1859, p. 340.)

Another Act upon the subject was passed in 1861, but there was no repeal of the former Act, and the price continued the same. (Stats. 1861, p. 355.)

This last Act was amended on the 26th day of April, 1863, but no change was made in the price. (Stats. 1863, p. 523.)

On the following day the Act upon which the appellant relies as relieving his land from the burdens of reclamation was passed. (Stats. 1863, p. 591.) This statute, so far as swamp and overflowed lands are concerned, merely refixes the price at one dollar per acre, but does not in any way interfere with the previous laws upon the subject of reclamation. It is true that it repeals all laws in conflict with it, but as it does not deal at all with the subject of reclamation, nor change the price of swamp lands, it in no respect conflicted with the previous statutes, and, therefore, did not repeal them. From which it results that the appellant took his land, subject to the burdens of reclamation then and thereafter to be imposed by the Legislature. His relation to the law creating the Board of Reclamation Fund Commissioners, therefore, differs in no respect from that of any other purchaser of swamp and overflowed lands. This being so, counsel for appellant, in his second point, concedes the power of the State to reclaim appellant's land in the manner proposed, which ends the case.

But admit, for the sake of argument, that the Act of April 27th, 1863, had the effect to repeal all laws upon the subject of reclamation, and that in consequence thereof the appellant took his land without any conditions as to reclamation, we say, the State has power to provide for the reclamation of all swamp and overflowed lands, in the manner and by the means proposed in the Act creating the Board of Reclamation Fund Commissioners, regardless of any terms or conditions upon which the owner may have acquired or holds the title.

Whoever asserts that an Act of the Legislature is unconstitutional, must put his finger upon the clause of the Constitution to which the Act is repugnant, for the Constitution is not the source of legislative power, but a restriction upon

it; and, if no restriction or prohibition is found, as to a given power, the power exists.

It is first claimed by the appellant that the Act in question takes private property for private use, and is, therefore, repugnant, I suppose, to the first section of the first article of the Constitution, which secures to the citizen the right " to acquire, possess, and protect property;" or to the clause " securing trial by jury;" or to the clause providing that " no person shall be deprived of life, liberty, or property without due process of law;" or to the clause prohibiting " the taking of private property for public use without just compensation."

It is next claimed that it is repugnant to the thirteenth section of the eleventh article of the Constitution, which requires that " taxation shall be equal and uniform; that all property shall be taxed upon the ad valorem principle, and shall be assessed by assessors elected by the people of the district," etc.

In answer to all this, we say that the Act in question is an exercise of the taxing power, for the purpose of defraying the expenses of a local improvement, the tax being imposed upon the lands benefited by the improvement, and does not, therefore, fall within any of the provisions of the Constitution above referred to. The clause of the Constitution in relation to the acquisition, possession, and enjoyment of property does not exempt property from taxation, nor does the right of trial by jury apply to proceedings for the collection of taxes, nor is the collection of taxes, by whatever mode, a taking of property without due process of law, nor is it a taking of private property for public use without just compensation. (*The People* v. *The Mayor, etc., of Brooklyn*, 4 Comst. 419; *Emery* v. *San Francisco Gas Co.*, 28 Cal. 345; *Sears* v. *Cottrell*, 5 Mich. 251; *Murray's Lessee et al.* v. *Hoboken Land and Improvement Co.*, 18 How. U. S. 272.)

Nor is a tax for local improvement within the clauses in relation to equal and uniform taxation, or the mode and manner of assessment, or the persons by whom assessments shall be made, or that all property shall be taxed. These clauses relate to taxation for purposes of revenue. In the matter of taxation for local improvements the Legislature is entirely untrammeled by the Constitution. (*Burnett* v. *The Mayor, etc., of Sacramento,* 12 Cal. 76; *Emery* v. *San Francisco Gas Company, supra,* and cases therein cited; *Egyptian Levee Co.* v. *Hardin,* 27 Mo. 495; *Yeatman* v. *Crandall,* 11 La. An. 220; *Wallace* v. *Shelton,* 14 La. An. 498.)

The construction of levees, as proposed by the Act in question, for the protection of the lands against inundation or overflow, is a public improvement, for which the Legislature has power to provide by taxation imposed upon the lands benefited or protected by such levees.

The reclamation of swamp and overflowed lands is a public work, because it promotes the health of communities; because it adds to the taxable wealth of the State, and promotes the general welfare and prosperity; because it adds to the population of the State, and lessens the average of public burdens needed for the support of the government; because the topographical and climatic conditions of the State imperiously demand it. It is a public work, because of its magnitude; because it requires the employment of vast capital, unity of action, uniformity of system, combined and organized labor, not attainable by unregulated individual effort.

The topographical conditions of Holland required that it should be surrounded with levees, and intersected with dikes and drains conforming to a general system or plan. They were supplied by the Government, acting under the power of taxation.

The aridity of Egypt and Peru made irrigation a public

need, and it has been supplied by the Governments of those countries.

The overflow of the Mississippi has demanded a system of levees along its banks for the protection of the adjacent country, and the power of the Government has been employed to cause them to be constructed and maintained at the expense of the lands thereby protected, and the power is not now disputed.

One sixth of the State of Ohio, known as the "Black Swamp," has been and is being reclaimed, by the State, by the exercise of this power.

The district of country lying between the Des Moines, Fox, and Mississippi Rivers, in Clark County, Missouri, has been protected from inundation by the means and in the manner proposed by the Act now before the Court. (Sess. Acts 1855, p. 74.)

The same is true of the swamps and marshes which once existed between the City of New Orleans and Lake Pontchartrain. (11 La. An. R. 338.)

In Massachusetts, meadows, swamps, and low lands are assessed among the proprietors to meet the expense of draining, without reference to any political district, and in proportion to the benefits received. (R. S. of Mass. 676; General Stats. 750; *Coombs* v. *Burt*, 21 Pick. 422; *Lay* v. *Hulburt*, 11 Met. 321.)

In Connecticut Commissioners are appointed, with power to drain marshy lands at the expense of the proprietors. (Statutes of Conn., ed. of 1839, p. 544; 1838, p. 544; 1849, p. 572.)

In the same way the tide water marshes adjoining the Bay of Newark and its tributary streams, in the State of New Jersey, have been drained and reclaimed. (18 N. J. Equity R. 518.)

Like laws exist in Indiana (1 R. S. 257), and in many other States.

In the same way the City of Sacramento has been protected from inundation.

In view of all this it is idle to contend that the power exercised in the Act before the Court has been denied to the Legislature. (*Tide Water Co. et al.* v. *Coster*, 18 New Jersey, 3 C. E. Green, 518; *Reeves* v. *Treasurer Wood County*, 8 Ohio State, 333; *People* v. *Nearing*, 27 N. Y. 306; *Anderson* v. *Kerns Draining Co.*, 14 Ind. 199; *Hartwell* v. *Armstrong*, 19 Barb. 166; *People* v. *Lawrence*, 36 id. 177; *Litchfield* v. *McComber*, 42 id. 288; *Egyptian Levee Co.* v. *Hardin*, 27 Mo. 495; *Crowley* v. *Copley*, 2 La. An. 329; *Zenor* v. *Parish of Concordia*, 7 id. 150; *Dubose* v. *The Levee Com.*, 11 id. 165; *Yeatman* v. *Crandall*, 11 id. 220; *Mithoff* v. *Carrolton*, 12 id. 185; *Cash* v. *Whitworth*, 13 id. 401; *Inge* v. *Police Jury*, 14 id. 117; *Draining Co.*, 11 id. 338; *Wallace* v. *Shelton*, 14 id. 498; *Selby* v. *Levee Com.*, 14 id. 434; *Bishop* v. *Marks*, 15 id. 147.)

What constitutes a public improvement is a legislative question, and the Courts have no power of review. (*Tide Water Co.* v. *Coster, supra; Sherman* v. *Buick*, 32 Cal. 241; *People* v. *Lawrence, supra*, 193, 194; *Commonwealth* v. *Bruel*, 4 Pick. 460; *Hartwell* v. *Armstrong, supra; Boston Water Power Co.* v. *Boston and Worcester R. R. Co.*, 23 Pick. 394; *Beekman* v. *The Saratoga and Schenectady R. R. Co.*, 3 Paige, 73; *Taylor* v. *Palmer*, 4 Hill, 151 (opinion of Chief Justice Nelson); *Van Horn* v. *Dorance*, 2 Dallas, 312; *Varich* v. *Smith*, 5 Paige, 160; *Spring* v. *Russell*, 7 Maine, 292; *Woodruff* v. *Fisher*, 17 Barb. 224; Sedgwick on Const. Law, 512, et seq.; *Dunn* v. *City Council*, Harper, 189; *De Varaigne* v. *Fox*, 2 Blatchford, 95; *Charles River Bridge* v. *Warren River Bridge*, 7 Pick. 453; *Blanding* v. *Burr*, 13 Cal. 350; *Napa V. R. R. Co.* v. *Napa County*, 30 id. 438; *Beals* v. *Amador County*, 35 id. 638; *People* v. *San Francisco*, 36 id. 601.)

By the Court, CROCKETT, J.:

It appears from the complaint that the plaintiff is the owner in fee, under a patent issued to him by the State of California, of a quarter section of swamp and overflowed land, situate in the County of Sutter, and which is included within Levee District No. 5, organized under the provisions of the Act of March 28th, 1868 (Stats. 1867-8, p. 514), for the reclamation of a large body of swamp and overflowed lands. The defendants constitute the Board of Reclamation Fund Commissioners, appointed and organized under the Act of March 30th, 1872 (Stats. 1871-2, p. 835); and the plaintiff avers in substance, that he is the owner in fee simple absolute of the quarter section referred to, deriving his title thereto under the Act of April 27th, 1863 (Stats. 1863, p. 591), having strictly complied with all its provisions, and having obtained his patent in due form in the year 1864. He further avers that he has taken no part in the proceedings to organize said levee district, and did not and does not now desire to have his land included therein, nor to have it protected from inundation; and that "for the uses to which he has devoted it and to which he desires to devote it, the said land is rendered more valuable by reason of the annual overflow." He further avers that he has not consented to any of the proceedings of the Board of Supervisors in their subsequent action in respect to said levee district and the reclamation of lands included therein; but, nevertheless, the Board of Supervisors, after the formation of said district, and as trustees thereof, proceeded with the work of reclamation by causing levees and embankments to be constructed, and in payment therefor issued warrants payable out of the funds of the district, to an amount exceeding one hundred and forty-four thousand dollars, which are still outstanding and unpaid; that the Engineer of the district reported to the Board of Supervisors that he estimated the entire cost of

reclaiming said district at six hundred and seventeen thousand nine hundred and eighty-four dollars, of which sum one hundred and forty-four thousand four hundred and seventy-eight dollars had been theretofore expended; that in pursuance of a notice issued by the Board of Supervisors, twelve persons, owning a majority of the whole number of acres included in said district, met at the time and place designated in the notice, and voted unanimously in favor of issuing bonds to provide for the payment of the outstanding indebtedness of the district, and to secure the funds necessary to complete the work at the estimated cost, as authorized by the Act of March 30th, 1872; that the plaintiff had no knowledge of this meeting, and, of course, did not participate in its proceedings, nor has he consented thereto or to the proposition to issue bonds for the purposes specified; that the Reclamation Fund Commissioners were duly notified by the Board of Supervisors of these proceedings, and have caused bonds to be prepared, purporting to be the bonds of said district, to the amount of six hundred and seventeen thousand nine hundred and eighty-four dollars, and are about to issue them under the provisions of the Act of March 30th, 1872, and will do so, unless restrained; that for the purpose of raising funds for the payment of the principal and interest of the bonds, the Board of Supervisors appointed three " Assessment Commissioners," who proceeded to assess all the lands included in the district, and amongst others the plaintiff's quarter section. The complaint then proceeds to recite the several provisions of the statute, from which it appears that the assessment will or may become a lien upon the plaintiff's land for its proportionate share of the common burden; and the prayer is for an injunction to restrain the defendants from issuing the bonds. A demurrer to the complaint was sustained, and the plaintiff declining to amend final judgment was entered for the defendants, from which the plaintiff appeals.

It is not alleged in the complaint, nor was it suggested at the argument, that any irregularity has occurred in the proceedings of the Board of Supervisors, or that the statute has not been strictly pursued. We shall, therefore, assume, for the purposes of this decision, that no irregularity has occurred.

On behalf of the plaintiff it is insisted that by his patent he acquired an absolute title in fee, subject to no conditions, restrictions, or limitations; and that the Legislature has no power under the Constitution to compel him against his will, by means of assessments or otherwise, to change the character of his land from wet to dry, nor to impose burdens upon it different from and in excess of the burdens imposed upon all other lands held in private ownership in this State. In considering this question it must be borne in mind that this land is a portion of that large body of swamp and overflowed land acquired by this State from the Federal Government, by virtue of the Act of Congress of September 28th, 1850 (9 U. S. Stats. at Large, p. 519), generally known as the Arkansas Act, by which there was ceded to that State the whole of the unsold swamp and overflowed lands within its limits; and by the fourth section of the Act its provisions were extended to each of the other States of the Union. Under this statute California acquired, as is well known, an immense body of valuable land in the valleys of the Sacramento and San Joaquin, and in other portions of the State which are subject to periodical inundation, which renders them in a great degree unfit for inhabitation or cultivation, until they shall have been reclaimed. The State of Arkansas was similarly situated. It also contained a vast body of fertile land, which was rendered unfit for use by the periodical overflow of the Mississippi and its tributaries. To reclaim these valuable lands would require a general and very expensive system of drainage and embankments; and Congress wisely concluded that a work of that character and of such magnitude

could be better accomplished by means of State than of
Congressional legislation. The object of the Federal Gov-
ernment in making this munificent donation to the several
States was to promote the speedy reclamation of the lands
and thus invite to them population and settlement, thereby
opening new fields for industry and increasing the general
prosperity. That this was the purpose which animated Con-
gress in making the grant is obvious from the first section
of the Act, which provides "that to enable the State of
Arkansas to construct the necessary levees and drains to
reclaim the swamp and overflowed lands therein, the whole
of those swamp and overflowed lands, made unfit thereby
for cultivation, which shall remain unsold at the passage of
this Act, shall be and the same are hereby granted to said
State." The second section contains a proviso, "that the
proceeds of said lands, whether from sales or by direct ap-
propriation in kind, shall be applied exclusively, as far as
necessary, to the purpose of reclaiming said lands by means
of the levees and drains aforesaid." In accepting the grant
the State was bound to carry out in good faith the objects
for which it was made, and the Legislature has at all times
recognized the binding force of the obligation. Hence we
find that the Act of April 21st, 1858 (Stats. 1858, p. 198),
after providing for the sale of the land at the rate of one
dollar per acre, directs that the proceeds of the sales shall
be paid into the State Treasury, "and shall be credited to
the account of a Swamp Land Fund, to be appropriated for
the reclamation of said lands, as the Legislature may here-
after direct." This is a distinct recognition of the duty of
the State to apply the proceeds of the sales of these lands
towards their reclamation. By the Act of May 13th, 1861
(Stats. 1861, p. 355), the Legislature inaugurated a system
for the reclamation of these lands by organizing a Board of
Commissioners for that purpose, who were to superintend
the work, and who, on the petition of the "holders of patents

or certificates of purchase of swamp lands, on a tract of swamp and overflowed land susceptible of one mode or system of reclamation, which petition shall represent one third, in acres, of said tract of land," were authorized to proceed with the work of reclaiming the specified tract in the manner directed by the Act, and payment for the work was to be made out of the Swamp Land Fund in the State Treasury. This Act was amended in some particulars by the Act of April 25th, 1863 (Stats. 1863, p. 523); but its general features were not changed. Two days thereafter, to wit: on April 27th, 1863, another Act was passed (Stats. 1863, p. 591,) establishing a State Land Office, with appropriate officers, and providing the method for the *sale* of the several classes of land derived by the State from the Federal Government, including swamp and overflowed lands, school lands, etc. The Act provides that after the requisite preliminary steps have been taken, and full payment has been made, a patent shall issue, signed by the Governor, " conveying to the party named the lands described in the body of the patent." This Act repeals " all Acts and parts of Acts " in conflict with its provisions, but is entirely silent as to the reclamation of swamp and overflowed lands, and is in no respect inconsistent with the prior statutes on that subject already noticed. It was under the last named Act (of April 27th, 1863,) that the plaintiff acquired his title, and he must be deemed to have acquired it with a full knowledge of the terms, conditions, and purposes on and for which the grant to this State was made by the Federal Government. He must be held to have known, when he took the title, that the State, by accepting the grant, had assumed an obligation to reclaim the land, and that it had already inaugurated a system for that purpose. He was bound in law to take notice of the public statutes above mentioned, and

must be deemed to have accepted the title in subordination to the paramount right and duty of the State to cause the land to be reclaimed. He cannot now, therefore, be permitted to set up his own wishes, nor his private interests, in opposition to the performance, by the State, of the obligation which it assumed to the Federal Government. On the contrary, as already stated, he must be presumed to have accepted the title in subordination to the right and duty of the State in that respect. It would practically defeat the whole scheme of reclamation contemplated by Congress, if the mere sale of the land to private proprietors should have the effect to exempt it from the power of the Legislature to reclaim it. Such a result would be not only extremely disastrous to the State, but in flagrant violation of its duty towards the Federal Government.

But, it is further insisted by the plaintiff that, even though it be conceded that the State has the power to cause the land to be reclaimed without his consent and against his wishes, he cannot be made to reclaim it at his own expense; that he has purchased and paid for it, and that in accepting the purchase money, and conveying the title without qualification, the State, by necessary intendment, undertook that it should be subject to no other burdens or impositions than other lands held in private proprietorship; that after paying for it, and thereupon obtaining an absolute title in fee, it cannot be assumed by implication that he undertook to reclaim it at his own expense, but, on the contrary, that the duty of reclamation rests on the State, which received the purchase money under an obligation imposed by the second section of the Act of Congress; that it should " be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid."

In reply to this argument it is said on behalf of the defendants, that the Act of April 27th, 1863, under which the plaintiff acquired his title, did not repeal, or even modify

the previous statutes providing a system for the reclamation of swamp and overflowed lands, and that he must be assumed to have accepted the title in subordination to the existing laws, and subject to the right of the Legislature to modify the then prevailing system of reclamation. The first branch of this proposition is undoubtedly tenable. That the Act of April 27th, 1863, did not repeal or materially modify the previous statutes providing a general system of reclamation, is clear, and it is equally clear, that in accepting the title, the plaintiff did so in view of the existing laws providing for the reclamation of such lands. Knowing when he purchased it that it would be subject to reclamation, even after the title passed, he must be deemed to have accepted his patent with a condition implied by law and annexed to the grant, that the land might be reclaimed in accordance with the then existing laws. But the Act of March 28th, 1868, under which "Levee District No. 5" was formed, materially modified the system of reclamation before prevailing. Previously the cost of reclamation was defrayed out of the Swamp Land Fund in the State Treasury; which Fund was composed of moneys received for the sale of swamp and overflowed lands; the moneys received from each swamp land district being applied towards the reclamation of lands in that district. But by the Act of 1868, the cost of the work is to be defrayed by means of assessments levied upon the land, each tract being assessed in proportion to the benefit it will receive from the reclamation; but all purchasers from the State are to be credited on their assessments with the amount of the purchase money paid. The practical effect of this system is to apply towards the work of reclamation the purchase money received by the State from the sale of the land; and if this be not sufficient to accomplish the work, the deficiency shall be supplied by means of assessments on the land. The proposition of the plaintiff is, that this system imposes upon his land, without

his consent, an onerous burden to which it was not subject when he acquired the title, and that the Legislature has no power to do this. Without discussing the authority of the Legislature to assess lands for purposes of local improvement under the general police powers, which are inherent in almost every form of civilized government, it may safely be assumed that when the plaintiff purchased this land, with a knowledge that it was incumbent on the State to reclaim it, and that a general system for that purpose had already been inaugurated, he must be deemed to have taken the title with a knowledge that the Legislature might afterwards modify the system, and to have consented to hold the title in subordination to these modifications. He must be presumed to have consented that, if the proceeds of the sale should prove to be insufficient to accomplish the reclamation, he would submit to the imposition of such burdens on the land to effect the object as the Legislature in its wisdom might deem expedient. Nor is there any hardship or injustice in this. The land was sold to him at a nominal price, with a knowledge on his part that it was to be afterwards reclaimed, and the State proposes to apply towards the work of reclamation the whole purchase money, requiring him only to make good the deficiency in the cost of reclaiming his own land. He could not reasonably have anticipated, when he purchased, that the sum of one dollar per acre which he paid to the State would suffice to reclaim the land, and he must be presumed, under the circumstances, to have accepted the title with the understanding that the Legislature might, and probably would, require him to pay the deficiency.

The other points suggested by the plaintiff's counsel are untenable, and I think the demurrer to the complaint was properly sustained.

Judgment affirmed.

Mr. Justice BELCHER, being disqualified, did not participate in the decision.