# PACKARD v. JOHNSON.[*]

## No. 8550; September 11, 1884.

4 Pac. 632.

**Evidence—Judgment—Judgment-roll.**—Plaintiff cannot Complain that a judgment-book introduced by defendant did not prove the judgment, if he himself introduced evidence of the judgment by introduction of the judgment-roll, although he introduced such judgment-roll for another purpose only.

**Limitations—Pleading.**—The Statute of Limitations is Sufficiently pleaded by reference in the answer to the sections of the code.

**Adverse Possession—Color of Title.**—A Decree Adjudging that a party or his grantor was the owner or seised of some estate in the lands in controversy is a "decree or judgment of a competent court," so as to operate as color of title in favor of one who enters in good faith under such a decree and holds adversely for five years, and will entitle such person to the benefit of the statute of limitations.

**Quitclaim Deed—Transfer of Title.**—A Quitclaim Deed is as Effectual to transfer title as a grant, or bargain and sale.

**Evidence—Declarations.**—Evidence, With Respect to His Title, of declarations made by a party after he had disposed of his interest in the property, is not admissible.

**Adverse Possession—Title of Real Owner.**—One may Hold Adverse Possession of lands so as to acquire title, without having knowledge of the nature of the title of the real owner.

**Patent to Land—Certificate of Purchase—Act of 1858.**—Where, under the act of 1858, a certificate of purchase of certain lands is issued to a person by the state, and it recites that payment in full has been made, such person thus acquires a perfect equity as against the state, and entitles him to the benefit of the statute of limitations from the date of the certificate.

**Swamp Lands.**—The Legislature of the State Has Power to Grant swamp and overflowed lands to private persons, and such lands are taken subject to state legislation in regard to the reclamation thereof.

---

[*]Cited and followed in Packard v. Moss, 68 Cal. 124, 8 Pac. 819, the facts in which case were essentially the same as those in the other.

Cited and approved in First Nat. Bank of Enid v. Yoeman, 17 Okl. 618, 90 Pac. 414, where the same rule of nonadmissibility is applied to declarations of ownership made by the grantor, in a chattel mortgage, after executing the instrument.

APPEAL from the Superior Court of San Joaquin County.

J. B. Hall for appellant; J. H. Budd and F. F. Baldwin for respondent.

By the COURT.—1. It is contended by appellant (plaintiff) that the court below erred in admitting in evidence the entry of a judgment in the judgment book of the district court. It is urged that the only competent evidence of the judgment was the judgment-roll. But, subsequently to the introduction of the book by defendant, the roll was introduced by plaintiff. It is said the plaintiff introduced the roll for the single purpose of proving the judgment to be void. The plaintiff, having cured the defect in defendant's evidence of the judgment, cannot rely upon his specific objection that the judgment-book did not prove the judgment. The validity or invalidity of the judgment is a very different matter.

2. The statute of limitations was sufficiently pleaded by the reference in the answer to sections of the code: Code Civ. Proc., sec. 458.

3. But it is further claimed the judgment is void on the face of the roll, and was not, therefore, "the judgment of a competent court," such as could set the limitation running: Code Civ. Proc., sec. 322. "The decree or judgment of a competent court," mentioned in section 322 of the Code of Civil Procedure, is a decree or judgment adjudging that a party, or his grantor, was the owner or seised of some estate in the lands. One who enters in good faith under such a decree, like one who enters under a conveyance purporting to convey the fee, and who continues in adverse possession (evidenced by the acts mentioned in section 323) for a period of five years, may claim the benefit of the statute. It is sufficient if a deed under which the adverse possessor enters purports upon its face to convey the lands in question, and describes them with such definiteness that they can be easily identified, although in fact it is invalid and insufficient to pass the title, or is voidable as a deed from an infant, or from an officer who had no authority in fact to convey the land; or although such authority, if he had any, is not shown; or although made under a sale which was subsequently invalidated by individual or judicial action. So, a tax collector's deed, a paper purporting

to be a will, a deed from a mortgagee, or an unrecorded deed, is good color of title: Wood, Lim., p. 525, sec. 259, and cases cited.

The defendant having introduced the sheriff's deed purporting to convey the premises in controversy, it is immaterial that plaintiff proved the judgment to be void.

By section 323 of the Code of Civil Procedure it is enacted that land shall be deemed to have been possessed and occupied by one claiming under a written instrument: "Where it has been usually cultivated or improved; where it has been protected by a substantial inclosure."

Sanor, the grantee of the purchaser at the sheriff's sale, testified that immediately after taking his deed, on the 24th of September, 1864, he moved onto the land, built a barn and house, and fenced it and put stock on it. "I put a post fence and rails and plank around it—a four-board fence around part of the land, and a part three-board. I got the land fenced, and got my house and barn on it, three or four months after my purchase from Cocke. From the time I bought of Cocke I had the exclusive use of the land, and enjoyed all the profits until I sold to defendant." He then stated facts tending to prove that plaintiff had knowledge that he claimed to be the sole owner while he occupied it. And the defendant testified that he fenced the demanded premises, with other land (the whole being land conveyed to himself and wife by Sanor, December 3, 1864), soon after he received the deed from Sanor, all in one inclosure. "I have kept the land fenced ever since I first fenced it, and the road has been fenced ever since that time. I have occupied and used the land exclusively—fenced with my other land. During all that time I have claimed the ownership; nobody else has claimed it that I know of. If there have been any rents and profits I have had them. I have paid all the taxes on it with the rest of my land," etc. This action was commenced October 28, 1881. The foregoing testimony and other evidence in the record justified the jury in finding an ouster of plaintiff more than five years before the commencement of the action, and an adverse holding for more than the statutory period. If it be conceded that the judgment upon which the sheriff sold and conveyed to the grantor of defendant's grantor in 1860 was void, that fact did not deprive the defendant or his

grantor, Sanor, of the benefit of the statute. As we have seen, a sheriff's deed, although the officer has no authority to sell, may give color of title.

In King v. Randlett, 33 Cal. 318, the court, after deciding that the party there claiming the benefit of the statute of limitations did not enter under a deed or conveyance, but under an instrument only purporting to assign one's right, title and interest in and to a constable's deed, added: "Whether, had Garrison conveyed to the defendant, the judgment and constable's deed would have been admissible as showing color of title in aid of defendant's plea, it is therefore unnecessary to determine. But upon this point, see Jackson v. Woodruff, 1 Cow. (N. Y.) 286, 13 Am. Dec. 525, and Gilbert v. Manchester Iron Co., 7 Wend. (N. Y.) 511."

Jackson v. Woodruff, so far as it bears upon the question before us, only decides that, where one claims under a deed as color of title, the description in the deed must include the lands in controversy. Gilbert v. Manchester Iron Co. is a miscitation. The court evidently intended to refer to Livingston v. Peru Iron Co., 9 Wend. 512. That was a case in chancery where the bill alleged that a conveyance of certain premises had been obtained by defendant by fraud. The court held a deed fraudulently obtained is not available as the foundation of an adverse possession, because the party setting up adverse possession must have entered bona fide.

We understand the court to have held, in Bernal v. Gleim, 33 Cal. 675, that the sheriff's deed in evidence in that case was void on its face. Certainly, none of the cases there cited sustain the proposition contended for by appellant in the case at bar. Besides the two New York cases already commented upon, Jackson v. Frost, 5 Cow. 346, La Frombois v. Jackson, 8 Cow. 589, 18 Am. Dec. 463, and Jackson v. Waters, 12 Johns. 365, are referred to. In the first of the three cases last named it was held, under the New York statute, that where one entered upon land, claiming it to be a gore between two patents, there was not such adverse possession against the true owner as would ripen into a right. In La Frombois v. Jackson, 8 Cow. 589, 18 Am. Dec. 463, it was held not to be necessary that an adverse possession, in order to be available within the statute of limitations, should commence under an effectual deed; and that an executory contract, the consideration being

paid, is a sufficient basis of claim under color of title. In Jackson v. Waters, 12 Johns. (N. Y.) 365, the court decided that a possession taken under a grant from the French-Canadian government, prior to the conquest of Canada by the British, of land now in the state of New York, was not such an adverse possession as would defeat the operation of a subsequent grant of the same land under the provincial government of New York. None of these cases hold that a sheriff's deed, following a sale under an invalid money judgment, cannot be made available as color of title. In the case at bar the questions of ouster and of adverse holding for five years after the ouster were questions of fact, and there was evidence at the trial in the court below to sustain the finding of the jury upon that issue.

4. We think the admission in evidence of the petition of Melville to set aside the judgment in Cocke v. Melville, and the order of the district court denying his motion could not have injured the plaintiff. The court, at the trial of the present case, expressly instructed the jury that the judgment was void.

5. The deed from Cocke to Sanor was admissible. From a very early day it has been held here that a quitclaim deed is as effectual to transfer title as a grant, or bargain and sale. Such a deed, therefore, gives color of right.

6. The conveyance of March 19, 1862, from plaintiff to defendant of lands adjoining the demanded premises was, at most, irrelevant and immaterial. It could not have prejudiced the plaintiff.

7. The evidence of Sanor with respect to his having improved and inclosed the premises after the receipt of his deed from Cocke was admissible under the plea of the statute of limitations.

8. The court properly rejected evidence of declarations of Sanor, with respect to his title, made after he had sold and conveyed to defendant.

9. The court did not err in refusing to instruct the jury that one cannot hold possession of lands adversely, so as to acquire the title, unless he has knowledge of the nature of the title of the real owner.

10. It is contended by appellant that, inasmuch as the title to the lands did not vest in the state until the certification by

the land department in December, 1866, and as ten years from that date had not lapsed when this action was brought, the plaintiff was not barred of a recovery. The certificate of purchase, under which plaintiff claims, was issued on the thirtieth day of August, 1858, under the act of April 21, 1858. By that act no certificate could issue until the whole purchase price of the land was paid, and the certificate in evidence herein recites that Melville had made payment in full. He thus acquired (at least, from the time the land was listed to the state) a perfect equity as against the state, and the case shows that no patent has been issued to him or his assignee. More than five years had elapsed after the land was certified to the state when this action was commenced. In Manly v. Howlett, 55 Cal. 94, it was said: "It is true that before the patent should issue the statute of limitations might build up a title in the possessor, as between the parties, so as to determine their rights upon the then condition of things; but the issuance of the patent gave new rights; the patentee and his grantees then had a right superior to any theretofore owned or held by them, viz., the ownership of the land. They then had something which the state had not theretofore parted with. In a suit for the recovery of the land, commenced after the issuance of the patent, the statute of limitations cannot be held to have commenced running prior to the date of the patent."

Two circumstances existed, or were assumed to exist, in Manly v. Howlett, which do not appear in the case at bar: First. In that case it appeared that subsequent acts were to be performed by the party claiming under the certificate before he would be entitled to a patent, viz., payment of the annual interest, and of the deferred purchase money. In the case before us, full payment of the purchase money had been made to the state before the certificate issued. Second. In that case a patent had been issued to the assignee of the certificate, before the action was brought. In the case at bar, neither the original holder of the certificate nor any assignee of his had received any further muniment of title when this suit was commenced.

As we have seen, when this action was commenced more than five years had elapsed after the certification of the land to the state. When the land was certified, the holder of the certificate of purchase, who had paid for the land and fully complied

with all the terms of his contract, became entitled absolutely to the patent. He became, as against the state, the owner of the land, at least equitably, and the state could not have recovered its possession. He acquired a perfect equity, and the act of 1858 clearly provides that when the land shall be certified to the state, the title thus acquired shall inure beneficially to the purchaser who has complied with the conditions imposed upon him, the state retaining, at most, but the naked legal title. Plaintiff, therefore, if he can be treated as the holder of the certificate, had a title with right of possession from December, 1866, of which his certificate was prima facie evidence, and of which his certificate and the certification to the state were conclusive evidence. His title, such as it was, gave him the right of possession, and it remained unchanged for more than five years prior to the commencement of the action. Even if it should be conceded that he may commence a new action within five years after he shall receive a patent for the land, he cannot recover, as against an adverse possessor, on a title acquired more than the statutory period before the present action was commenced.

11. It is said that the state is charged with a trust in respect to land of the swamp-land donation, and that, if the state may be disseised at any time before reclamation, the power to execute the trust is gone, for the subject of the trust is then under the absolute and exclusive dominion of the disseisor. It is not necessary to decide whether, if the state had not parted with its title, it could have been disseised of a portion of the swamp lands. Here, as we have seen, the right of possession had passed to the holder of the certificate of purchase, in whom had vested a perfect equity, with an absolute right to demand a patent. Appellant cites in support of his position with respect to the trust certain adjudications which, as we think, do not support it. Emigrant Co. v. County of Adams, 100 U. S. 61, 25 L. Ed. 563, rather upholds the view that the power of reclaiming swamp and overflowed lands is in the state, without any other security that such lands will be reclaimed or that the proceeds of their sales will be applied to reclamation purposes than such as rests upon the good faith of the state; that the state may employ its discretion in the disposition of the proceeds, and providing means for reclamation, without being called on to account, and without the title

to the lands being affected, at least, at the option of any party other than the United States. It would follow from this, and from the wording of the act of Congress of September 28, 1850 (9 Stats. 519), that the state may dispose of the lands prior to their reclamation. There is no provision in the act of the legislature of April 21, 1858, to the effect that such lands shall not be sold or that no certificate of purchase or patent shall issue until after the lands are reclaimed. The state of California has provided, by appropriate legislation, for the reclamation of swamp and overflowed lands after the title of the state thereto had passed to private persons.

Kimball v. Reclamation, etc., 45 Cal. 344, is authority to the point that one who accepts a grant from the state for swamp lands is presumed to accept with a consent that he and his land shall be subject to subsequent legislation imposing a burden on the lands to secure their reclamation. The case assumes that such lands may be conveyed prior to their reclamation, and that the state may discharge its duty and comply with the condition subsequent imposed by the grant from the United States, by appropriate legislation, providing for reclaiming the lands after they have passed to private proprietorship. Appellant also cites Hoadley v. San Francisco, 50 Cal. 265. But in that case it was held that one cannot acquire a title by adverse possession to a public square or a public street—laid out and dedicated as such on pueblo lands within the limits of San Francisco—because the city had no power to alienate or in any manner dispose of such public squares or streets. With reference to the swamp and overflowed lands, the legislature of the state has power to grant them to private persons. As we have seen, the state had transferred the right of possession to the particular land herein sued for.

Judgment and order affirmed.