## The First National Bank of Enid v. E. E. Yoeman.

(Filed January 9, 1907.)

1. **EVIDENCE—Replevin—Admissions.** In an action of replevin, where the defendant bases his title and right of possession of the property upon the foreclosure of a chattel mortgage, the admissions, declarations, and statements of the mortgagor at a time subsequent to the execution of the mortgage are not admissible for the purpose of impeaching the mortgage or showing that the same was without consideration, or that he did not have the legal right to mortgage the same at the time of the execution of the mortgage and the admission of the testimony as to such statements, admissions, and declarations, over objection, is error.

2. **TRIAL—Remarks of Trial Judge.** Observations of the court to counsel in the hearing of the jury, during the progress of the trial though open to criticism if of but slight importance and only possibly, not probably, injurious, will not be sufficient to warrant a reversal where the jury are properly instructed that they are the sole judges of the evidence.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before B. F. Burwell, Trial Judge.*

*Whittinghill & Hubbell,* for plaintiff in error.

*Rush & Steen,* for defendant in error.

#### STATEMENT OF FACTS

This was an action in replevin, brought by the defendant in error, E. E. Yoeman, to recover possession of certain cattle, to wit: 75 head of cows branded "Y" on the right hip;

and 52 calves, yearlings and under, steers and heifers, branded "Y" on right hip; and damages. The plaintiff bases his right of possession upon a sale of the cattle to him from his father, A. J. Yoeman, and alleges that the same were wrongfully taken by the agents of the plaintiff in error, and are now wrongfully detained from him. The plaintiff in error bases its right of possession upon the foreclosure of a certain chattel mortgage given by one A. J. Yoeman to the plaintiff in error, and alleges that the property at the time of said mortgage belonged to the said A. J. Yoeman. The case was submitted to a jury and after plaintiff closes his evidence, defendant interposed a demurrer thereto. The court overruled said demurrer, to which action and judgment of the court the defendant duly excepted. The jury returned a verdict for the plaintiff. Judgment of the court was rendered for the plaintiff upon said verdict, to which the defendant duly excepted. Afterwards, and within three days from the returning of said verdict, plaintiff in error filed its motion for new trial, upon the following grounds: First, for irregularity of the proceedings of the trial by which the defendant was prevented from having a fair trial: Second, for excessive damages, which were given in said cause under and on account of prejudice: Third, because of an error in the assessment of the amount of recovery, which was too large and excessive: Fourth, because the verdict and the judgment returned thereon in said cause is not sustained by sufficient evidence: Fifth, the verdict of the jury and the judgment of the court rendered thereon, is contrary to law; and sixth, because of error of law occurring at the trial and which was excepted to by the defendant at the time. The court overruled defend-

ant's motion for new trial to which action of the court the defendant duly excepted, and the plaintiff in error brings this case to this court for review.

Opinion of the court by

IRWIN, J.: The plaintiff in error, in its assignment of error, alleges that the court erred in overruling the motion of plaintiff in error for a new trial. The other assignments of error are included in this assignment. Plaintiff in error especially calls the attention of the court to the admission of evidence on the part of the defendant in error. Under this head and as highly prejudicial to the defendant in error, and over its objection and exception, was the admission of certain hearsay evidence.

It seems by the record in this case that a witness, John Clapp, a witness for the defendant in error, was permitted to testify to a conversation overheard by him between "the old man and wife" the father and mother of defendant in error as follows:

"Q. Do you know anything about the old man being indebted to Ed?
"A. I did.
"Q. What do you know about it?
"A. All I know is from their conversation. I heard the talk between the old man and wife.
"Objected to as incompetent. Overruled. Exceptions noted.
"A. I heard him say he owed Ed so much money and that was the reason he bought these cattle for Ed.
"Q. Do you know what his indebtedness was for?
"A. Yes sir.
"Q. What was it?
"A. For the farm he bought of Ed."

Now these declarations and admissions alleged to have been made by the father of the plaintiff, were the statements and declarations of A. J. Yoeman, the person whom the defendant alleged gave the chattel mortgage upon which they base their title. We think the rule is well established that where a party in a replevin action bases his title and right of possession upon a chattel mortgage, that the declarations and statements of his mortgagor made at a time subsequent to the execution of the mortgage are not admissible to defeat the mortgage or to say that it was without consideration, or that the mortgagor did not have title or the right to mortgage.

In the case of *Meyer et al., v. Munro, Sheriff,* reported in the 71 Pac. at page 969; the supreme court of Idaho, say:

"Declarations of the mortgagor, made after the execution of the mortgage, as to his purpose in executing the mortgage, or the amount due, or any other statement touching the *bona fides* of the transaction, are inadmissible, unless the mortgagee has been shown to have been a party to a common unlawful purpose between mortgagor and mortgagee."

In this case there is nothing in the record which tends to show that the plaintiff in error, defendant in the court below, was a party to any unlawful purpose between it and A. J. Yoeman, the mortgagor.

In the case of *Ward v. Johnson, et al,* 72 Pac. 242; the Kansas supreme court say:

"The owner of cattle, jointly possessed with another pledged them orally to the latter, and afterwards gave a chattel mortgage to a third person: *Held*: That evidence of communications by the owner to the pledgee, was inadmissible to defeat the mortgagee's rights, unless shown to have been communicated to him before he took the mortgage."

In the case of *Scheble v. Jordan, et al,* 1st Pac. 212, the Kansas supreme court, say:

"A declaration of one from whom a party obtains title to property, made after the transfer of title and in derogation of that title, is inadmissible in evidence against the latter."

In the case of *Sumner v. Cook* 12 Kans. 132, the supreme court of Kansas speaking through Justice Brewer, says:

"To make a declaration of one from whom a party obtains title to property admissible in evidence against the latter, it must have been made during the time the interest in the property was vested in the person making the declaration."

In the case of *Walden v. Purvis,* 15 Pac. 91, the supreme court of California says:

"In an action against a sheriff for wrongfully taking cattle donated to plaintiff by his father, a statement alleged to have been made by the father after he had parted with the possession of the cattle is inadmissible either to prove the fraudulent character of the gift, or for any other purpose."

In the case of *Krewson, et al, v. Purdom, et al.,* reported in the 3rd. Pac. 822, the supreme court of Oregon says:

"The declaration of a vendor, after he has parted with his interest in and the possession of the property is inadmissible to impeach the title of his vendee, in the absence of proof of fraud or collusion."

In the case of *Emmons v. Barton,* reported in the 42 Pac. 303, the California supreme court, say:

"Declarations of a grantor of land being admissible against the grantee only when made 'while holding the title' are not admissible when made after the grant, though the grantor be still in possession of the property."

In the case of *Packard v. Johnson,* reported in the 4 Pac. 632, the California supreme court, in the body of the opinion, on page 636, says:

"The court properly rejected evidence of declarations of Sanor, with respect to his title, made after he had sold and conveyed to defendant."

In the case of *Silva v. Serpa,* reported in the 24 Pac. 1013, the supreme court of California say:

"On suit in foreclosure, it is error to admit evidence of the mortgagor's declaration, made after the execution of the mortgage, that it was given without consideration, and only for the purpose of putting the property beyond the reach of his wife, with whom he was having difficulty."

In the case of *Toms, et al., v. Whitmore, Sheriff,* reported in the 44 Pac. 56, the supreme court of Wyoming say:

"In replevin by a pledgee against an officer attaching the goods for a creditor of the pledgor, declarations of the pledgor against the pledgee's title, made after delivery of the pledge, and in the absence of the pledgee, were inadmissible."

In the case of *Cedar Rapids National Bank v. Lavery,* 81 N. W. 775, the Iowa supreme court, says:

"Declarations of the grantor after the conveyance, are not admissible against the grantee in an action to set aside the conveyance as fraudulent."

In the case of *Norfleet's Adm'r v. Logan,* 54 S. W. the Ky. supreme court, say:

"Admissions of the grantor, not made in the presence of the grantee, are not admissible for creditors seeking to set aside the conveyance as fraudulent."

In the case of *McCartney v. Kraper,* 84 Ill. App. 266, that court says:

"Statements of a seller, at the time an execution is levied on such property, after the sale of personal property, are not proper evidence on a trial between the buyer and a judgment creditor of such seller involving the title of the property."

In the case of *Sanger v. Jesse French Piano & Organ Co.,* 52 S. W. 621, the Texas court of civil appeals, says:

"Declarations of a vendor, affecting title to property sold by him, after he has parted with possession, are inadmissible against his vendee."

Now from these authorities, we think it clear that these statements of the mortgagor of defendant were not competent, and the question in this case being *bona fides* of the title of the defendant Yoeman, this evidence would be material on the part of the plaintiff. It is alleged by counsel for defendant in error that although this may be error, it is not reversible error for the reason that the same testimony is introduced without objection at another time in the trial as shown by the previous pages of the record. We have examined these pages, and we do not think it bears out this contention. Page 67 of the record shows that the same witness was asked the question:

"You may state whether or not you remember anything about A. J. Yoeman's buying any cattle from Schuyler?

"A.   I do.

"Q.   For Ed?"

Here the record shows the question was objected to as incompetent, irrelevant and immaterial, which was overruled by the court.

"Q. Who did he buy these cattle for, if you know?

"A. Ed.

"Q. How do you know he bought them for Ed?

"A. I heard a conversation between Ed's father and mother, and his wife.

"Q. Ed's wife, you mean?

"A. Yes sir.

"Q. A conversation prior to the time he bought them?

"A. Yes sir.

"Q. Where was Ed at that time?

"A. Either down around Watonga, or on his claim, I won't say which."

Now, it seems to us that to a certain extent, this subject was gone into, but at the beginning of the investigation, the plaintiff in the court below duly objected, and his objection was overruled, and his exception saved. Then a few other questions were asked on the same line, which do not appear to have been objected to, but the record does not disclose that they went into the question of these declarations or statements of A. J. Yoeman, the mortgagor, as fully and in detail as they did at the part of the record complained of. Now, we have no doubt that this action of the court would constitute reversible error.

The only remaining assignment of error which is assigned by counsel for plaintiff in error, and argued in their brief for a reversal of this case, is that the court made improper and prejudicial remarks concerning the evidence in the case, in the presence of the jury. We have examined the record, and we do not think that the remarks of the court could have been prejudicial to the interests of the defendant or in any way biased him or his interests in the minds of the jury. The remarks that were made by the court appear on

page 120 of the record, where it seems that the following remarks passed between counsel for plaintiff in error and the court.

"Mr. Whittinghill: We have a witness who has not appeared as yet, we being summoned into this case hurriedly with very little notice, and it now being the hour for adjournment, we ask your honor to adjourn until tomorrow, so we may have this witness here. The witness we wish to introduce is to show the condition of the cattle and the history of them from the time taken up until this time.

"The Court: Have you introduced all the evidence you expect to except that?
"A. Yes sir.
"By the Court: If that is true, I am not sure it would avail anything to wait for you to produce this witness.
"Mr. Whittinghill: I think it is important that the evidence should be put in.
"The Court: So far I don't think you have shown any defense at all with the record as it stands now. You may have evidence to show a right to these cattle, but there is not anything before the court to show it.
"By Mr. Hubbell: We would like an exception to that.
"The Court: Exception saved. The evidence which you have already introduced is all necessary, but the evidence is lacking which would authorize you to hold this stuff.
"Mr. Whittinghill: Of course, we aim to introduce the mortgage in evidence and these other papers.
"The Court: That puts a different light on the matter."

Thereupon the court granted their request and adjourned to the next day for them to procure the witness they desired.

Now, any detrimental effect that the first remark of the court might have had, we think was certainly cured by the

last remark, that the statement of counsel, "Put a different light on the matter" and no juror could understand that under those circumstances the court was making any comment on the weight or effect of the testimony.

There are three other assignments of error which are mentioned in the argument and brief of counsel for plaintiff in error, to-wit: That the court erred in refusing counsel for plaintiff in error to cross-examine the witness, Clapp, as to the statement made by A. J. Yoeman to his wife. We do not think the record will bear out the contention of the counsel for plaintiff in error, as on page 70 of the record, it appears that this witness was cross-examined on this subject by counsel for plaintiff in error.

The other assignment is that there is no evidence which supports the verdict. This we do not think is borne out by the record, as the jury were the sole judges of the weight and credibility of the evidence, and they had before them the testimony of the defendant in error, E. E. Yoeman, and upon that testimony they found for the defendant in error, and we are not prepared to say that the evidence does not reasonably tend to support that finding, and under the frequent rulings of this court, we will not disturb a finding of a jury or reverse the same on a question of fact, where the evidence reasonably tends to support such finding.

The only remaining assignment of error is that the defendant in error, Yoeman, is estopped from claiming these cattle for the reason that he, together with A. J. Yoeman, his father, at some time subsequent to the execution of the mortgage in question made a property statement to the bank for the purpose of securing a loan to himself and A. J. Yoeman,

in which statement this mortgage by A. J. Yoeman was disclosed, but this proposition has been once before called to the attention of this court. In the case of *Bank of Enid v. Yocman,* reported in the 14 Okla. at page 626, and in answer to this contention, it is only necessary to refer to what this court in that case says. At page 634 of the opinion, is the following language:

"It is also contended that Yoeman was estopped from setting up any claim to these cattle as against the bank, upon the ground that he and his father had subsequently borrowed money from the bank and rendered a property statement in which it appeared that these cattle claimed by E. E. Yoeman had been mortgaged to the bank previously, by A. J. Yoeman, and that he failed at that time to make any claim of ownership. We are unable to see how any element of estoppel enters into this transaction. There was nothing loaned or consideration passed at that time upon the strength of the ownership or status of these cattle; that loan was made and security taken upon certain specific chattels, of which these cattle composed no part. Nor is the bank making any claim as a general creditor of A. J. Yoeman. As before stated, they assert to hold these cattle by virtue of a specific lien created by A. J. Yoeman, and not by E. E. Yoeman, and they must stand or fall by this chattel motgage, and there is no claim that E. E. Yoeman made any statements or representations to them prior to the time this mortgage was executed, and so long as the bank advanced nothing in this transaction or did not change their position to their own detriment, as fixed by the mortgage under which they claim, these subsequent transaction are irrelevant."

On account of, and for the reason of the errors of the trial court in admitting the evidence complained of, which was prejudicial to the rights of the plaintiff in error, the de-

cision of the district court is reversed, and the cause remanded at costs of the defendant in error, with directions to grant a new trial.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.