[Nos. 13349, 13460, 13461.   In Bank.—November 30, 1889.]

THE PEOPLE ex rel. GRAVES, Appellant, *v.* M. M. McFADDEN et al., Respondents.

THE PEOPLE ex rel. GRAVES, Appellant, *v.* THE COUNTY OF ORANGE, Respondent.

THE PEOPLE ex rel. GRAVES, Appellant, *v.* THE COUNTY OF ORANGE et al., Respondents.

CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER — SUBMISSION TO VOTE OF PEOPLE — SPECIAL ACT — CREATION OF COUNTY OF ORANGE. — The act of March 11, 1889, which provides for forming the county of Orange out of part of the county of Los Angeles, upon the assent of two thirds of the qualified electors of the proposed new county voting at an election to be held for that purpose at a time fixed in the act, is constitutional, and is not a delegation of legislative authority, nor in conflict with the provisions of the constitution upon the subject of special legislation, in any matter which affects its general scope and purpose.

81   489
99   573
81   489
100   424
81   489
114   320
81   489
f130   636
j130   637
81   489
142   516
81   489
143   420

ID.—CONDITIONAL STATUTE—LIMITATION OF TIME.—The legislature may pass a conditional statute, and make the taking effect of its provisions to depend upon some subsequent event, and may provide a time within which an act must be done to carry the provisions of the statute into effect, if done at all. Making certain provisions of the act to depend upon the vote of the people of a county does not delegate to the people the power to pass or repeal the act, the act being a valid statute from the time of its passage and approval, and the legislature itself providing that if the provisions of the act were not accepted within the period named they should not thereafter be carried into effect.

ID.—SPECIAL LEGISLATION—MUNICIPAL CORPORATIONS—POLITICAL CORPORATIONS—COUNTIES.—Counties are not municipal corporations within the meaning of section 6, article 11, of the constitution, which provides that corporations for municipal purposes shall not be created by special act; but are political corporations, so far as they are to be regarded as corporations at all.

ID.—APPLICABILITY OF GENERAL LAW—QUESTIONS OF FACT—LEGISLATIVE POLICY—CREATION OF NEW COUNTY.—Whether a general law can be made applicable depends upon questions of fact, of which the legislature is the exclusive judge. The policy of creating a new county, and fixing its boundaries, is to be determined by the legislature alone.

ID.—INCIDENTS TO ORGANIZATION OF NEW COUNTY—CLASSIFICATION—INDEPENDENT SPECIAL PROVISIONS.—The legislature, having constitutional power to organize a new county by special act, may make all special provisions which are incident to its complete organization, and which do not extend in their operation beyond the time when the organization shall become complete and subject to the operation of general laws, and may classify the county until the next census, according to the best information it can command as to its population. Whether special provisions which do not affect the validity of the whole act are constitutional will not be considered when the question under discussion relates only to the validity of the act as a whole.

APPEALS from judgments of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Chapman & Hendrick,* and *Gottschalk & Luckel,* for Appellant.

*Victor Montgomery,* and *Hutton & Swanwick,* for Respondents.

Fox, J.— All of these cases involve, so far as the merits are concerned, precisely the same questions, and are

brought to accomplish the same end, and for the same relief; the three actions being brought to meet a doubtful question as to who were the proper parties defendant, under the circumstances, to an action brought for that purpose.

The cases are submitted together, ably argued on both sides, and a speedy determination desired upon the merits, regardless of the question of parties.  The three cases cover all the possible necessary parties, and we shall proceed to consider the merits of the case as if it were but a single case, and not attempt to discuss the question as to who were necessary or proper parties.

The real question is, whether the act of the legislature of the state of California, approved March 11, 1889, entitled "An act to create the county of Orange, to define the boundaries thereof, to determine the county seat by an election, and to provide for its organization and election of officers, and to classify said county" (Stats. 1889, p. 123), is constitutional or not.

In each case demurrer to the complaint on the merits was sustained, and judgment of dismissal entered, from which plaintiff appeals.

1. The first point made by appellant is, that the act is a delegation of legislative authority, and is therefore void.

The first section of the act provides that " upon the assent of two thirds of the qualified electors voting at an election to be held for that purpose, as provided in sections 4 and 5 of this act, there shall be formed out of the southeast part of Los Angeles County a new county, to be known as the county of Orange, which shall rank as a county of the fifteenth class, until the census of 1890 is taken, and a new apportionment is had."  The second section defines the boundaries; the third provides that the county seat shall be chosen as thereinafter provided; and the fourth provides for the appointment of commissioners, to be appointed by the

governor, whose duty it should be, after qualifying, and on a day named in the section, to order a special election to be held within the boundaries so fixed for the new county, upon a day also named in the act, at which the electors should determine by ballot whether or not said territory should be organized as a new county under the act,—the act itself adopting for the purposes of that election the election precincts within the territory, as the same had been established by the board of supervisors of Los Angeles County, of which it was then a part,— the commissioners to canvass the returns and declare the result. If two thirds of the qualified electors voting at such election vote in favor of the creation of the proposed county, then said commissioners are to divide the county into a convenient number of judicial townships, road and school districts, define their boundaries, and designate the name of each. They are also to establish election precincts, and give thirty days' notice by publication of the precincts established, designating the names and boundaries thereof; and also to divide the county into five supervisor districts, and give a like notice of the names and boundaries thereof; and they and their president and secretary are authorized and required by law to discharge the same duties as are required of boards of supervisors and county clerks, so far as the same apply to holding elections, canvassing returns, and issuing certificates of election. Within a period not exceeding six months from the first meeting of the commissioners, they are to order an election in said county for the election of county officers, and the selection of a county seat. They are to keep a record of all their proceedings, and of the result of both elections, transmitting a certified copy thereof to the secretary of state, and filing the original in the office of the county clerk as soon as that officer shall have been elected and qualified, and thereupon the duties of said commissioners shall cease and terminate. If, however, at said first-named

election "less than two thirds of the qualified electors voting for and against the creation of the proposed county vote for the creation of said county, then this act shall cease to be of any force or effect." Other provisions of the act may be hereafter noted, but are not material to the point now under consideration, except, perhaps, the concluding sentence of the act, which reads: "This act shall take effect and be in force from and after the date of its passage and approval."

The proposition is not disputed that the legislature has no power to delegate its legislative authority; but the question turns upon whether this is a delegation of such authority or not. Counsel for appellant has cited several authorities in support of that contention, among them *Ex parte Wall*, 48 Cal. 279, but they do not strike us as being in point. In *Ex parte Wall*, and *State* v. *Weir*, 33 Iowa, 134, 11 Am. Rep. 115, the real question was, whether the legislature could authorize the people of a given locality to suspend the operation, within such locality, of a general penal statute of the state, and the court held that it could not do so. The other case cited was similar in character. While there is a wide diversity of opinion in the reported cases as to what questions the legislature may, and what it may not, submit to the arbitrament of the people, we think it will rarely be found that the submission of a question like that submitted by the act now under consideration to a vote of the people has been held to be a delegation of legislative authority.

Mr. Cooley, in his work on Constitutional Limitations, in discussing this subject (pp. 141 et seq., 4th ed.), after laying down the rule in very strong language that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority, and citing many cases in support of it, adds: " But it is not always essential that a legislative act should be a completed statute which must in any event take effect as a law, at the time it leaves the hands

of the legislative department. A statute may be *conditional*, and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may in some cases be adopted, of which the parties interested are at liberty to avail themselves, or not, at their option." After citing as illustrations the cases of private and municipal corporations, he proceeds (p. 144): "For the like reasons, the questions whether a county or township shall be divided and a new one formed, or two townships or school districts formerly one be reunited, or a city charter be revised, or a county seat located at a particular place, or after its location removed elsewhere, or the municipality contract particular debts, or engage in a particular improvement, is *always* a question which may with propriety be referred to the voters of the municipality for decision."

This principle was adopted by this court in the case of *Upham* v. *Supervisors of Sutter County*, 8 Cal. 378, where it was held that, while the legislature cannot delegate its legislative powers, it can delegate the power to the voters of a county to select a county seat therein; and also in *People* v. *Fund Commissioners*, 13 Cal. 343, where the legislature had passed an act authorizing the issue of certain bonds, *unless*, upon petition duly filed, and at an election thereupon held, the people of San Francisco should vote against the issuance of such bonds. Of like effect is the decision in *Robinson* v. *Bidwell*, 22 Cal. 379, where the court held that the vote of the people, under an act providing therefor, upon a proposition to issue bonds, and where the bonds were to be issued or not, according as the majority of the votes should determine, was not an act of legislation, but simply an event, upon the happening of which the law is to take effect. (See also *Hobart* v. *Supervisors of Butte County*, 17 Cal. 23.)

In the case of *People* v. *Nally*, 49 Cal. 478, this court held that an act which submits to a popular vote of the

electors of a county the question whether a portion of the territory of an adjoining county shall be annexed to it, and provides that if the majority of the votes are for annexation, then the organization of the adjoining county shall be abandoned, and its territory shall be divided and annexed, in part to the county in which the vote is taken and in part to another adjoining county, was not unconstitutional.

On the authority of that case the ruling of the court below in this case, as to the point now under consideration, should be affirmed. But we may add to the reasoning given in the case referred to, that the act here under discussion is, in its nature and effect, an enabling act; and as such it was full and complete, as an act of legislation, when it received the approval of the governor. Its purpose was to enable the people resident within the territory described in the act to segregate themselves from the county of Los Angeles, and to erect and maintain for themselves a county government. No doubt the legislature had the power to create a new county without submitting the question to a vote of the people, as Congress had the power to admit California into the Union without an enabling act; but as the burdens of the new local government were to be mainly borne by the people within the territory, it was, in the language of Mr. Cooley, " with propriety referred to the voters for decision," and they were permitted, and by pursuing the course prescribed by the terms of the act enabled, to assume the position of a county in the state, and the burdens of a county government, or not, as they should elect; just as four states were at about the same time permitted and enabled to assume the position and burdens of states in the Union, or not, as the people thereof respectively should at the polls decide.

But it is further claimed that if the act does not delegate to the people the power to create the law, it does delegate to them the power to repeal it, by reason

of the sentence: "If, at such election, less than two thirds of the qualified electors voting for and against the creation of the proposed county vote for the creation of said county, then this act shall cease to be of any force or effect"; and that by reason thereof the whole act is void. If the effect of this sentence was, as claimed, to delegate to the people the power to repeal the act, a complete and perfect answer to the objection would be that the sentence might be stricken out entire without affecting any other portion of the act. This being so, the presence of this sentence does not render the whole act void. (*Robinson* v. *Bidwell*, 22 Cal. 379; *People* v. *Nally*, 49 Cal. 478; *Ex parte Frazer*, 54 Cal. 94.) But we do not think that such was the force or effect of this clause. The law was complete and in force the moment it was approved by the governor. It provided for different steps and stages of proceedings in carrying it into effect. One of its provisions was, that when it had reached a certain stage in those proceedings, which stage must be reached within a time limited by the legislature, the further proceeding under it should depend upon the happening of an event which might or might not happen, to wit, the favorable vote of the electors. If that event or contingency happened, then all the remaining provisions of the act were to be carried into effect; and this, too, was to be done within a time limited by the act. If the event did not happen, then by its own terms no further provisions of the act were to be carried into effect.

Not only had the legislature the power to provide upon what condition or contingency the provisions of the act might be carried into effect, but also to provide within what time it must be done, if done at all; and it may have been a wise provision, in view of the rapid changes taking place in the conditions of the surrounding country and the numbers of its people, to say to them, If you do not choose to accept the permission granted by the

provisions of this act within the time herein named, it shall not remain an open permit, to be accepted at any future time.   It may very well be that the legislature was willing to create a new county, located and bounded as proposed in the act, at that time, and not be willing or deem it wise to create one in the same locality or with the same boundaries two or four years hence.   Conditions may so change that in the early future two or more new counties may be needed in that part of the state, or on the other hand, it may not be desirable then to make any change.   Whatever may have been the reason which moved the legislature thereto, it did not delegate to the people the power to repeal the act, but itself said that if the provisions of the act were not accepted within the period named, they should not thereafter be carried into effect.

2. Another point made is, that the act is in violation of section 6, article 11, of the constitution, which provides that corporations for municipal purposes shall not be created by special laws.

This point does not seem to be very seriously insisted upon in argument, but it is proper to notice it.   It is sufficient to say of it that it is easily deducible from the constitution itself, that a county is not a "corporation for municipal purposes" within the meaning of the section referred to.   Article 11 is on the subject of "cities, counties, and towns."   The first five sections relate entirely to the organization and management of county governments; the first section giving to them a designation different from that of "municipal corporations." It reads: "The several counties, as they now exist, are hereby recognized as *legal subdivisions* of this state." With the sixth section commence the provisions in reference to municipal corporations, and it and the two following sections are devoted exclusively to that subject, having nothing in them relating to counties or county government.   So also with section 19.   Sections 9 to 14,

inclusive, and sections 16, 17, and 18 relate to subjects which are common to both counties and cities and towns, and every time that either is mentioned the three are mentioned by name, and not as organizations of a single class, as "municipalities" or "municipal corporations." Section 15 clearly defines the distinction between the two as classes. It reads: "Private property shall not be taken or sold for the payment of the corporate debt of any *political* or *municipal* corporation."

It is clear, therefore, that the constitution does not hold counties to be municipal corporations, or " corporations for municipal purposes"; but so far as they are to be regarded as corporations at all, they are " political corporations." And this is in harmony with the common acceptation of the terms " municipality " or " municipal corporation," as used in the common and written law of both England and America time out of mind. This view is also in harmony with those provisions of the statutes and codes which define counties to be " bodies politic and corporate," and also with the decision of this court, made before the adoption of the constitution, when it declared that a county is not a municipal corporation within the meaning of that term as used in the Political Code. (*People* v. *Sacramento County*, 45 Cal. 695.) It was also so understood by the framers of the constitution, as shown by the debates in convention. (See vol. 2, p. 1050, and vol. 3, pp. 1482, 1483, 1502, 1509.)

3. It is also claimed that the act is void, because it is in conflict with or passed in violation of article 4, section 25, subdivision 33, of the constitution, wherein it is provided that " the legislature shall not pass local or special laws . . . . in cases where a general law can be made applicable."

This point is not well taken. While it may be found practicable, and the legislature has already endeavored by a single act to provide a uniform system of county government, we can hardly conceive it possible, in view

of the varied conditions of the different localities in this state, if indeed it could be done in any state, to frame a single law which should meet the necessities of each attempt to organize a new "political subdivision of the state." In any event, whether such a law could "be made applicable" depends upon questions of fact which this court has no means of investigating, and upon the solution of which it would not attempt to substitute its judgment in place of that of the legislature. The policy of adding to the number of the "political subdivisions of the state" is one to be determined by the legislative department of the government in each instance when the proposition to do so is made; and if the determination be favorable, then the legislative department alone must fix and determine the boundaries of such subdivision.

4. Appellant claims that several distinct and separate provisions of the act are in conflict with distinct and separate subdivisions of section 25, article 4, of the constitution, prohibiting local and special legislation on specific subjects, and that as to each of those provisions it is unconstitutional and void; as in the provision defining the duties of the commissioners, giving them the power to create supervisor, school, and road districts, and election precincts, and to exercise the powers conferred upon boards of supervisors in the matter of calling elections, canvassing the returns, and the like; the provision classifying the county; the one consolidating certain offices; the one providing for the transfer to the new county, when organized, of certain causes which may be then pending in the courts of the county of Los Angeles; and perhaps some others.

It would extend this opinion beyond any limit of necessity to discuss each of these objections separately. By the very terms of the act these provisions relate to the mere incidents of the organization of the county, and provide for acts which must be done in order to complete the organization and preserve the orderly and harmonious administration of the government and the

laws. None of them extend in their operation beyond the time when the organization shall have become complete, and the subject-matters of its jurisdiction under the general laws shall have been brought and placed under its control, except, it may be, the single one of the classification of the county, and that extends, as does the classification already made of all the other counties, only until the taking of the next census and the readjustment of representation. It was and is the duty of the legislature to classify all the counties, and for this purpose it may classify them by population. (Const., art. 11, sec. 5.) It had done this as to all the other counties; and it must necessarily classify every new county as it is organized, according to the best information at its command, until such time as the new county can fall into the line of classification prescribed by the general law. It did so classify this one, the classification to remain in force until, and only until, a readjustment of the classification of all the counties will take place under the provisions of the general law on that subject. We have no doubt of the authority of the legislature to do this; and as to the objections of a like character made to other separate provisions of the act we may say, the legislature, having the power to create and organize a new county, had power and authority to adopt the measures necessary to its complete organization, and to the bringing and placing of the subject-matters of the jurisdiction of its courts or officers under their control; and all this might be done by the same act: these things were germane to the main object of the bill. Unless the validity of the whole act depends upon the constitutionality of one or more of these provisions of detail for the organization, the court ought not in this action to express an opinion as to the constitutionality of these separate provisions. It will be time enough to pass upon those provisions when some right dependent upon the disputed provision is brought before the court for adjudication. (*Brooks* v. *Fischer*, 79 Cal. 173.)

No one of them that is now questioned seems to be so blended with the general scope and purpose of the act as a whole as to affect the validity of the whole act, or any other of its provisions; therefore its invalidity (if it should be invalid) would not defeat the general scope and purpose of the act. As to the objection made to the provisions in regard to the holding of the elections, the manner of conducting them, and designating the places of voting, the constitution itself expressly excepts the case of the organization of new counties from the inhibition against local and special legislation. (Art. 4, sec. 25, subd. 11.) And here it may be remarked that this very exception shows that the framers of the constitution recognized the probable necessity of legislation which might be denominated local or special in cases of the organization of new counties.

But it is contended that the court ought now to determine the question of the constitutionality of these separate provisions to which attention is called, and of each of them, even if they do not go to the merits of the whole act, and if any of them be found to be unconstitutional, then to consider and determine the question of whether or not the people would have been likely to have accepted the provisions of the act as a whole, and perfected an organization under it, if the provisions so found to be unconstitutional had been omitted from it. This is inviting the court to enter a field of pure conjecture, and upon a speculation as to probabilities in which we cannot indulge. All that we need to say here is, and that we do say, that the vote of the people was not an act of legislation, and that the act for the organization of the county of Orange is not, as a whole, or in any matter which affects its general scope and purpose, in conflict with the constitution.

The judgment appealed from is affirmed in each case.

BEATTY, C. J., MCFARLAND, J., SHARPSTEIN, J., WORKS, J., PATERSON, J., and THORNTON, J., concurred.