[Civ. No. 533.    Third Appellate District.—September 29, 1909.]

# RECLAMATION DISTRICT NO. 70, Respondent, v. MARY SHERMAN and LOUIS F. BYINGTON, Appellants.

APPEAL FROM JUDGMENT—TRANSCRIPT NOT CONFORMING TO RULE—PRACTICE.—Upon appeal from the judgment in this case taken under the method prescribed by section 941b of the Code of Civil Procedure, it is held that the transcript does not conform to rule 7 of the supreme court; and that transcripts on appeal hereafter taken which do not conform to that rule will not be allowed to be filed, nor the appeal considered, except as to such questions as may be reviewed on the judgment-roll alone, when the judgment-roll is in a proper, separate and distinct form from the transcript.

ID.—RULES OF SUPREME COURT PART OF SYSTEM OF PROCEDURE.—The rules of the supreme court for the government of appellate practice are as much a part of our system of procedure as the rules promulgated by the legislature; and the consequences of a failure to observe them rests upon the lawyer and not upon the court.

RECLAMATION DISTRICTS—NATURE OF ORGANIZATION—CONSTRUCTION OF CODE—CONSTITUTIONAL LAW.—Reclamation districts do not belong

to any class of corporations defined by section 284 of the Civil Code, nor do they come within the purview of the prohibition of section 1 of article XII of the constitution forbidding the creation of corporations by special act; nor are they municipal corporations within the provisions of section 6 of article XI of the constitution.

Id.—Governmental Agencies—Power of Legislature not Limited by Constitution—Specific Purpose.—Reclamation districts are governmental agencies which may be formed and organized by special act; and the general power of the legislature for their creation, organization and control is not limited by the constitution of the state. They are formed to carry out a specific purpose, and the public agency ceases with the accomplishment of that purpose.

Id.—Policy of Reclamation Schemes—Conclusive Determination by Legislature.—The policy of schemes for the reclamation of swamp and overflowed lands is one for conclusive determination by the legislature.

Id.—Action by Reclamation District to Enforce Assessment—Legality of Organization not Collaterally Assailable.—In an action by a reclamation district to enforce an assessment upon property situated therein, the legality of its organization is not collaterally assailable on the ground that the act creating it, which appears to be valid on its face, in fact includes within its limits two other reclamation districts existing at the time of its creation. In no case can the legality of a reclamation district established by the legislature be collaterally attacked in a suit to enforce an assessment.

Id.—Act Expressly Repealing Inconsistent Acts.—Where the act organizing the plaintiff district expressly repealed all inconsistent acts, if there existed at the time of its passage any law authorizing the maintenance of districts which were made a part of the district created, such laws were repealed at least by necessary implication. The legislature has the power to repeal laws creating irrigation districts, and may change its policy in relation thereto. It must be presumed conclusively against a collateral attack that it acted with due regard to the rights of all land owners, and that the act creating the plaintiff district is in all respects legal and valid.

Id.—Extrinsic Facts Showing Illegality of District—Inquiry Confined to Prosecution Against District.—It appearing that an act establishing an irrigation district is valid upon its face, if there be any facts extrinsic to the act showing its invalidity and the consequent illegality of the district, an inquiry to that end, if any authority for it exists, must be prosecuted directly against the district, upon relation of the attorney general, and not against any acts of officers charged with the administration of its affairs.

Id.—By-laws of Reclamation District—Mode of Adoption and Change—Invalid Amendment by Trustee.—The by-laws of a

reclamation district can only be adopted and changed by the land owners of the district. The board of directors had no authority to amend them by change of the time for regular meetings of the board.

Id.—Authority to Call Special Meetings—Unanimous Meeting of Directors—Question of Special Notice Immaterial.—Where the original by-laws gave authority to the directors to hold special meetings upon notice to all the directors, where all of the directors were present at a special meeting, the question whether it was regularly called upon due notice becomes immaterial.

Id.—Validity of Assessment not Vitally Dependent on Regularity of Meetings.—It is not vitally material to the validity of a reclamation assessment whether or not all the meetings of the board, regular or special, have been held or called according to the strict letter of the provisions of the by-laws, where it appears that all the members were present, that the organization of the district is lawful, that there was no fraud in the election of trustees, and the assembled board has discharged its duties fairly and honestly, and that the assessment commissioners have been fair and honest in the assessment of all the lands of the district according to the benefits to accrue to each piece or tract of land by reason of the reclamation works.

Id.—Evidence—Answer Calling for Conclusion of Witness.—The court properly excluded evidence calling for the conclusion of a witness.

Id.—Technical Defense—Rules Governing Evidence.—Where the defense to this case is technical in the extreme, we approve of the course of the trial court holding defendants' counsel to the strictest letter of the rules governing the admission and exclusion of evidence.

Id.—Disinterestedness of Assessment Commissioners—Mortgage Taken by Wife of One After Appointment—Validity of Assessment.—The validity of the assessment cannot be affected by the fact that a mortgage was taken upon the lands in the district by the wife of one commissioner after the qualification and appointment of the commissioners.

Id.—Valid Action by Majority—Code Rule.—There being no inhibition in the act creating the commissioners to the contrary, the action of the majority of the commissioners would be valid without reference to the qualification of one of them to act. Under section 15 of the Political Code, words giving a joint authority to three or more public officers or other persons are construed as giving such authority to the majority of them unless it is otherwise expressed in the act giving the authority.

Id.—Office of Assessment Commissioner Created by Statute—De Jure Office—Acts of De Facto Officer Binding.—The office of

11 Cal. App.—26

assessment commissioner, being created by statute, is a *de jure* office. The commissioner, whose wife became a mortgagee, was a *de facto* officer, who, when appointed and qualified as such, acted under color of office, and was presumptively entitled thereto. He was engaged as such *de facto* officer in the discharge of the duties of a *de jure* office, and his acts were as valid and binding as those of a *de jure* officer.

ID.—COMMISSIONER DISINTERESTED WHEN APPOINTED.—It appearing that the wife of the commissioner took the mortgage subsequently to his appointment and qualification, though the money therefor was furnished by him to her, he was at the time of such appointment and qualification a disinterested person.

ID.—DUTY OF COMMISSIONERS IN MAKING ASSESSMENT.—It is the duty of the commissioners in making the assessment to make an estimate of the whole expense of the proposed reclamation works, and then assess the lands embraced in the district proportionate to the whole expense thereof and according to the benefits which will result to each parcel of land from such reclamation.

ID.—DISCRETION—PRESUMPTION—"PRIMA FACIE EVIDENCE" UNDER CODE. The statute contemplates the exercise of considerable discretion on the part of the commissioners in determining the question of benefits. While an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the land, under the statute, must be presumed to have been the result of a contemplation of all the elements necessary to a just apportionment of the assessment; it being provided in section 2463 of the Political Code that the assessment list is *prima facie* evidence of the validity of the assessment, and that it was apportioned in obedience to law.

ID.—BURDEN OF PROOF TO OVERTHROW PRESUMPTION.—Where the assessment or a certified copy thereof has been filed, a *prima facie* case is made out in favor of the assessment and of the validity of the lien against the lands of the defendants; and the burden was cast upon them to overcome the presumption that the assessment was apportioned according to the law.

ID.—ACTION TO ENFORCE ASSESSMENT UPON LANDS EMBRACED IN DISTRICT—BENEFIT BY RECLAMATION CONCLUSIVE—INCOMPETENT EVIDENCE.—Where the lands of the defendants appealing were included by the legislature in the reclamation district, it must be conclusively presumed that their lands will be benefited by the reclamation works, and evidence offered by defendants to prove the contrary was incompetent, and was properly rejected.

ID.—EVIDENCE TO SHOW INEQUALITY OF ASSESSMENT.—If the offered evidence be viewed in the light of an offer to show inequality in the assessment according to benefits, its probative force or value in that regard was matter for the determination of the trial court.

ID.—FINDING OF BENEFIT TO EVERY TRACT.—A finding that all the land in the district was assessed in proportion to benefits and to the whole expense incurred in reclamation is supported by evidence as well as by the presumption in favor of the validity of the assessment, and it cannot be said as matter of law that the offered evidence was sufficient to overcome that presumption.

ID.—EFFECT OF PRESUMPTION AS EVIDENCE.—A presumption of law is not an arbitrary rule which is necessarily destroyed as evidence by opposing evidence; since, if it is not fully disproved or admitted to be so, it still remains for the jury or trial judge to determine whether the presumption is outweighed, and to find in favor of the presumption against evidence not sufficient in the judgment of the jury or court to overcome its effect.

ID.—REFUSAL TO ADJOURN COURT FOR CUMULATIVE EVIDENCE—DISCRETION.—Where a large amount of testimony had been introduced on the question whether the assessment was made according to benefits, the court did not abuse its discretion in refusing to adjourn the case for the testimony of a witness subpoenaed by the defendants to prove that their land was not benefited by the reclamation works, and that the assessment was not according to benefits. It cannot be said, as matter of law, that any different result would have been reached if such testimony had been given.

APPEAL from a judgment of the Superior Court of Sutter County.  K. F. Mahan, Judge.

The facts are stated in the opinion of the court.

Milton Shepardson, and E. A. Bridgford, for Appellants.

A. H. Hewitt, and A. L. Shinn, for Respondent.

HART, J.—This is a suit for the enforcement of a lien upon certain land of defendants, situated within the limits of Reclamation District No. 70, under an assessment for reclamation purposes. Judgment passed for the plaintiff, and this appeal is from said judgment under section 941b of the Code of Civil Procedure. The transcript of the proceedings, etc., as authorized by said section, is not in form as required by rule 7 of this court, and we will, therefore, take occasion to here say that hereafter no transcript in an appeal taken directly to this court under the section mentioned will be filed, nor the appeal, except as to such questions as may be reviewed on an appeal from the judgment on the judgment-

roll alone where the judgment-roll is, as here, presented in a proper and separate and distinct form from the transcript of the proceedings, will be considered by this court, unless such transcript conforms to the requirements of said rule 7 [144 Cal. xliv, 78 Pac. ix]. It would seem scarcely necessary to say that rules laid down by the supreme court for the government, in many particulars, of the appellate practice are as much a part of our system of procedure as the rules promulgated for that purpose by the legislature, and they are, therefore, as much the necessary learning of the practicing lawyer as either the rules of procedure and practice established by the legislature or the principles of substantive law. The consequences of failure to observe these rules are upon the lawyer and not upon the court. The cumbersome and unwieldy form of the record here is excused in this instance only because the section under which the appeal is prosecuted is new, and, further, because the litigation involved in the action is of more than ordinary importance, for the reason that the defendants' land has been decreed to be sold for the satisfaction of the assessment levied by the plaintiff.

The validity of the assessment is challenged by appellants on the grounds: 1. That the act of the legislature by which the plaintiff was organized as a reclamation district (Stats. 1905, p. 717) is unconstitutional and void, because, it is claimed, it is a special law, and, therefore, violative of article XII, section 1, of the constitution; 2. That embraced within the boundaries of plaintiff are two other reclamation districts, which were created under the provisions of general laws and which were in existence at the time of the enactment of the law establishing and organizing plaintiff; 3. That the board of trustees of plaintiff, by resolution, amended the by-laws adopted, in pursuance of section 3452 of the Political Code, by the land owners within the district; 4. That the assessment commissioners were not disinterested persons, as required by and within the meaning of the language of section 3456 of the Political Code; 5. That the commissioners "did not take into consideration the quality and grade of the lands of the district in fixing the assessments, and had nothing before them to show the relative heights of the land."

1. Upon the first point the contention is, as stated, that a reclamation district is a "corporation" within the meaning

of article XII, section 1, of the constitution, which, in part, provides: "Corporations may be formed under general laws, but shall not be created by special act."

In support of this contention, counsel cite a number of early California cases in which reclamation districts are declared to be corporations: *Dean* v. *Davis,* 51 Cal. 410; *People* v. *Reclamation District 108,* 53 Cal. 348; *People* v. *Williams,* 56 Cal. 647; *People* v. *Larue,* 67 Cal. 526, [8 Pac. 84]; *Irrigation Dist.* v. *De Lappe,* 79 Cal. 353, [21 Pac. 825]. And as late as *Angus* v. *Browning,* 130 Cal. 503, [62 Pac. 827], it was held that Reclamation District 108 was a corporation, citing *People* v. *District 108, supra,* but it is not therein expressly declared, nor do we think the court intended to hold in that case, that reclamation districts belong to any of the classes of corporations defined by section 284 of the Civil Code, or that they come within the purview of the article and section of the constitution enjoining the creation of corporations except by general laws. Long before the decision in *Angus* v. *Browning,* 130 Cal. 503, [62 Pac. 827], the supreme court declared in the case of *People* v. *Reclamation Dist. No. 551,* 117 Cal. 121, [48 Pac. 1016], that reclamation districts, even if, for the want of a better term, they may be called corporations, were not within the definition of "corporations" as given by section 284 of the Civil Code, and this view has not only been adopted by the supreme court in a case decided subsequently to the case of *Angus* v. *Browning,* 130 Cal. 503, [62 Pac. 827], but it has been expressly held that such districts may be formed and organized by special acts. (*People* v. *Levee Dist. No. 6,* 131 Cal. 30, [63 Pac. 676].)

In *People* v. *Reclamation District No. 551,* 117 Cal. 121, [48 Pac. 1016], the court, referring to the corporations defined by the section of the Civil Code referred to, says: "These [reclamation] districts, in my opinion, belong to neither of these classes. They are special organizations, formed to perform a certain work, which the policy of the state requires or permits to be done, and to which the state has given a certain degree of discretion in making the improvements contemplated. They are described by Dillon in his work on Municipal Corporations, sections 24, 25 and 26. He calls them *quasi* corporations. Perhaps it would have been more accurate to say that they are not corporations at

all, but are so classed because many of the presumptions and rules which apply to corporations have been made applicable to them. They are public agencies, which would cease to exist when the policy of the state has changed so that they are no longer required, or when there is no further function for them to perform. And there is nothing in the constitution relating to municipal corporations which would prevent the state from so changing its policy as to put them out of existence." (See *Hensley* v. *Reclamation Dist. No. 556,* 121 Cal. 96, [53 Pac. 401].)

The case of *People* v. *Levee Dist. No. 6,* 131 Cal. 30, [63 Pac. 676], before referred to, sets at rest and completely dissipates all doubt which may have existed as to the nature of reclamation and irrigation districts and the extent of the power of the legislature in forming them. It is there said: "Section 1 of article XII of the constitution, having reference to private corporations, provides that they may be formed under general laws, but shall not be created by a special act. Article XI, section 6, of the constitution, declares that corporations for municipal purposes shall not be created by special laws. The act of 1891 [Stats. 1891, p. 235] is unquestionably a special law. If Levee District No. 6 be a corporation, it is certainly not a private corporation, and must, if it be recognized by the constitution at all, come under the designation of article XI, section 6—'a corporation for municipal purposes.' And if it be a corporation for municipal purposes within the meaning of that article and section, then indubitably, the act of March, 1891, forcing upon it a new, distinct, and different organization, is special and inhibited legislation. But is Levee District No. 6 a corporation for municipal purposes within the meaning of the constitution? Expressions will be found in the cases where such organizations have been designated 'corporations for municipal purposes,' or 'public corporations,' or 'corporations for public purposes,' but these were convenient phrases of designation and description, rather than judicial declarations as to the nature and character of these agencies. The question propounded is conclusively answered by *People* v. *Reclamation Dist. No. 551,* 117 Cal. 114, [48 Pac. 1016].' It is there held that a reclamation district, conceding it to be a corporation, is not a corporation for municipal purpose within the mean-

ing of the constitution. But as such levee districts, or recla-
mation districts, are distinctly not private corporations, they
are corporations in a class by themselves, and the general
powers of the legislature for their creation, organization and
control are in no wise limited by the constitution of the state.''
(See, also, *Reclamation Dist. No. 551* v. *County of Sacra-
mento,* 134 Cal. 478, [66 Pac. 668], and *People ex rel. Chap-
man* v. *Sacramento Drainage District,* 155 Cal. 373, [103
Pac. 207].) In the last-mentioned case it is said:

"The act does no violence to article I, section 11, nor to
article IV, section 25, nor to article XI, section 6, of the
constitution of the state. That the district here organized,
if it be considered a corporation at all, is not a corporation
organized for municipal purposes within the contemplation
of article XI, section 6, of the constitution, must be taken
as well settled. (*People* v. *Reclamation District 551,* 117
Cal. 114, [48 Pac. 1016]; *People* v. *Levee District No. 6,* 131
Cal. 30, [63 Pac. 676]; *Reclamation District* v. *County of
Sacramento,* 134 Cal. 477, [66 Pac. 668].) It is unnecessary
to repeat the reasons set forth in the decisions in those cases
by which the conclusion there reached was expressed, to the
effect that such districts are, in strictness, not corporations at
all, but rather governmental agencies to carry out a specific
purpose—the agency ceasing with the accomplishment of the
purpose. But, additionally, it may be said that the likeness
of these agencies to corporations is superficial, and that the
similitude—for it is no more than this—ceases if considera-
tion be paid to the fact that the state could accomplish this
very work without organizing a district as such at all, and
without giving the land owners within the district any voice
in the selection of the managers or trustees. Thus it would
be perfectly legal and competent for the legislature, delim-
iting a tract of land, itself to appoint a commissioner or com-
missioners to perform all of the functions which, under the
existing schemes, are performed by the trustees and the as-
sessors. . . .

"Nor, while a special act, is the law obnoxious to the other
sections of the constitution above cited. The considerations
dictating the necessities of a special law are plain as above
set forth. It would require a clear showing upon the face
of the law itself that a special act was not required, before

a court would interfere with the determination of a co-
ordinate branch of the government upon this subject, and,
generally, as is said in *People* v. *McFadden,* 81 Cal. 489, [15
Am. St. Rep. 66, 22 Pac. 851], the determination of such a
matter 'depends upon questions of fact which this court has
no means of investigating, and upon the solution of which
it would not attempt to substitute its judgment in place of
that of the legislature.' ''

Nothing more can be said upon the point under considera-
tion than is expressed in the foregoing authorities, which, it
is clear, conclusively settle the proposition adversely to the
claim of the appellant.

2. The proposition that the assessment is invalid because
the act creating plaintiff embraced within the limits of the
latter two reclamation districts existing at the time of the
creation of plaintiff cannot be maintained. Counsel argue
that the destruction of the two districts in the manner sug-
gested must result in the taking of the property of the land.
owners within the old districts without due process of law.
In reply to this argument, it is to be said that, even if the
point were one which could be appropriately urged against
the validity of the assessment in the case at bar, there is noth-
ing in the record before us showing, or tending to show in
the slightest degree, that the property of the land owners in.
the old districts has been taken without just compensation
having been paid for it, or without due process of law, by
the act of the legislature establishing the boundaries of plain-
tiff and authorizing its organization as a reclamation dis-
trict.

But the point is one which the defendants cannot urge in
this proceeding against the legality of the assessment. If
the legislature has, by its act creating the plaintiff, trespassed
upon or usurped any of the rights of other reclamation dis-
tricts existing before and at the time of the establishment
of the boundaries of plaintiff, the matter is one for the at-
torney general, upon the relation of some land owner of one
or both of the old districts, to inquire into through appro-
priate legal proceedings. In other words, the point under
consideration involves a collateral attack upon the legal ex-
istence of plaintiff, and such an attack is not within the right
of the defendant in this case to interpose, for, if it be a fact.

that plaintiff has no legal existence for the reason here suggested by appellants, it does not so appear from the face of the act creating plaintiff, and, therefore, such fact cannot, obviously, constitute a defense against the legality of the assessment. (*People* v. *La Rue,* 67 Cal. 526, [8 Pac. 84].) The act creating the plaintiff is, upon its face, in all respects, perfectly valid, and if facts extrinsic to the act itself may disclose the invalidity of the enactment and consequently the illegality of the district, an inquiry to that end, if there exists authority for any such inquiry, must be prosecuted directly against the district and not against any of the acts of its own officers or the other public officers who are charged with the administration of its affairs. It is well settled that the legality of reclamation districts and like *quasi*-public corporations or public agencies established for similar purposes cannot, in a suit to enforce an assessment for the purpose of their creation and organization, be challenged; or, in other words, their legality cannot be collaterally attacked. (*Hoke* v. *Perdue,* 62 Cal. 545; *Reclamation Dist.* v. *Gray,* 95 Cal. 601, [30 Pac. 779]; *Swamp Land Dist.* v. *Silver,* 98 Cal. 51, [32 Pac. 866]; *Quint* v. *Hoffman,* 103 Cal. 506, [37 Pac. 514, 777]; *Reclamation Dist.* v. *Turner,* 104 Cal. 334, [37 Pac. 1038].)

The act, by express language, repeals all acts and parts of acts inconsistent with its provisions, and, manifestly, if there existed at the time of its passage any law authorizing the maintenance of districts which were made a part of the district created by said act, such law was repealed, at least by necessary implication. The legislature is to be presumed to have known of the existence of such other districts, and to have considered and weighed all vital matters with respect to their operation and expenditures as such and the extent of their efficiency to accomplish, in full measure, the purposes for which they were created. There can be indulged no presumption that the effect of an act of the legislature, if enforced, will be to destroy vested rights or to take property without due process of law, where such effect is not made clear from the language of the act itself. That it is within the power of the legislature to repeal laws creating reclamation districts is a proposition well established. The swamp

and overflowed lands of California were granted by the general government to the state upon condition that the latter would reclaim the same so that they might become suitable for the purposes of cultivation, and those who become purchasers of such lands from the state so take them subject to the obligation to perform the same condition. (*Kimball* v. *Reclamation Fund Com.*, 45 Cal. 344; *Lamb* v. *Reclamation Dist.*, 73 Cal. 133, [2 Am. St. Rep. 775, 14 Pac. 625] ; *County of Kings* v. *County of Tulare*, 119 Cal. 509, [51 Pac. 866] ; *Miller & Lux* v. *Batz*, 142 Cal. 447, [76 Pac. 42] ; *Reclamation Dist.* v. *County of Sacramento*, 134 Cal. 477, [66 Pac. 668].)   Therefore, the state may adopt any policy consistent with reason for the prosecution of the work of reclaiming such lands; for there is no limitation placed by the constitution upon the power of the legislature to change its policy with regard to this subject.  As is said in *People* v. *Reclamation Dist.*, 117 Cal. 114, [48 Pac. 1016], speaking of reclamation districts, "they are public agencies which would cease to exist when the policy of the state has changed, . . . and there is nothing in the constitution relating to municipal corporations which would prevent the state from so changing its policy as to put them out of existence."  If, therefore, the legislature deems it to be a wise and beneficent policy, to the end that the state's obligation to reclaim and conserve the vast bodies of swamp and overflowed lands ceded to it by the general government, to put out of existence any particular reclamation district which it has created, or to combine two or more districts already in existence into one, or to form a new district embracing lands included within the boundaries of other existing districts, it must be conclusively presumed, in a collateral attack upon the legality of such new district so formed, that the law-making department has acted with due regard to the rights of the land owners of the old districts, and that, in fact, the latter act is in all respects legal and valid.  In short, the policy of our schemes for the reclamation of swamp and overflowed lands is one for exclusive determination by the legislature, and, as before declared, if the acts of that body upon the subject are, upon their face, regular and valid, they cannot be impeached in any collateral proceeding.

3. It appears from the record that the owners of the land embraced in district 70, or those owning a majority in acreage of such land, in pursuance of section 3452 of the Political Code, adopted a set of by-laws for the government of the business of said district, and that subsequently the board of trustees amended said by-laws so as to change the time for holding the regular meetings of said board from the last Saturday in each month to the first Monday in each month; and further amended the by-laws with respect to the extent of the notice to be given the members of the board of trustees of special meetings of the board.

Section 3452 of the Political Code, *supra,* provides that the land owners of the district shall adopt by-laws for the government thereof, and that such by-laws "may be amended at any time in the same manner that the original by-laws were adopted."

It is not seriously contended that the effect of the mere unauthorized act of the board of trustees in amending or attempting to amend the by-laws is to vitiate the assessment; but appellants complain in this connection that the trial court committed prejudicial error by its alleged refusal to permit them to prove that the regular meetings of the board at which all the important business of the district committed to that body was transacted were held on the first Monday of each month, in accordance with the requirement of the amendment which the board undertook to make to the by-laws in that particular, instead of on the last Saturday of each month as prescribed by the by-laws, and, further, that the court would not permit proof as to the notice given, if any, to the members of the board of trustees of any special meetings at which the business of the board was transacted.

The rulings complained of were upon questions propounded by counsel for the appellants to the secretary of the board of trustees.

Directing his attention to the resolution adopted by the board purporting to change the regular meeting days of said board to the first Monday in each month, this witness was asked if said board had held its meetings "pursuant to" said resolution, and whether said board had "met upon any other day as a regular meeting than Monday as provided by this

resolution''; and whether, ''after the passage of that resolution your board adopted Monday as the regular meeting day of said board.'' To these questions the objection was made by the plaintiff, and upon that ground sustained by the court, that they called for the opinion or conclusion of the witness and as well called for immaterial testimony. Objection was sustained on the same ground to the following question by appellants to the same witness: ''I will ask you if pursuant to a resolution contained on page 2 of your minutes in relation to special meetings that if you pursued the method therein provided for giving notice of special meetings as therein provided for alone?'' The object sought to be attained by the questions thus propounded to the secretary was, undoubtedly, to show that the board of trustees had held the meetings for the transaction of their official business upon days other than those prescribed for either regular or special meetings by the by-laws as adopted by the land owners.

The by-laws, as so adopted, provide that, in the case of special meetings, the same may be held at any time at the call of the president of the board, ''upon notice given to each trustee by mail, at least *one day* before such special meeting.'' The purported amendment by the board provided that special meetings may be held ''upon five hours' previous notice thereof given personally by the president to each member of said board or without such notice if all members are present.''

The trial court made no specific finding as to the days upon which the meetings were held, but the judge, in rendering his decision, said: ''I think the evidence clearly shows it was done at some meeting other than a regular meeting of the board, but as to what notice was given of the meeting at which these acts were performed there is no testimony.''

It is very plain that the trustees of a reclamation district have no right or power to amend or change the by-laws of such district adopted by the land owners. The statute places this power in the land owners, and they alone may exercise it. But we do not look upon a provision in such by-laws fixing the time at which regular meetings of the board of trustees shall be held and prescribing the prerequisites to the calling of a special meeting as being so vital as to materially affect an assessment levied for the purposes of such an organization. The object of such a provision is, of course, to guarantee the

proper observance of the greater and paramount consideration involved in all reclamation schemes whose prosecution is authorized by the state, to wit: That the business for which such districts have been formed shall be faithfully transacted and their purpose finally accomplished by those charged with that duty. If the law has been substantially followed in the organization of such districts; if the election of the trustees has been unattended by fraud or dishonest practices; if the board has discharged its duties honestly and fairly; if the assessment commissioners have been fair and honest in the assessment of the lands in the district, taking into consideration in the performance of that duty all the elements essential to a just and equitable apportionment of the assessment of each piece or tract of land, according to the benefits which will accrue to it by reason of the reclamation works, then, under these circumstances, it is not vitally material, in our opinion, whether all the meetings of the board of trustees, whether regular or special, have been held or called according to the strict letter of the provision of the by-laws fixing the time at which regular meetings shall be held or prescribing the prerequisites to the calling of special meetings.

There is no suggestion here that there was any fraud in any of the proceedings leading to the organization of the district or in the assessment. Nor is there any claim that any of the meetings of the board were not attended by all the members of said board, and if it could be assumed that the appellants could have proved, if the court had permitted the testimony, that certain special meetings of the board had been held without the notice prescribed by the by-laws having been previously given to the members of the board, and it appeared, as is conceded here, because it is not questioned, that all the members were present at such meetings, we hardly think any court could be found that would set at naught an assessment levied for so important a purpose and thus undo the fruition of long and laborious work and thereby impede the progress of an enterprise which the state itself has obligated itself to press to a successful termination, merely because of the omission to give a notice, the sole and only purpose of which had in fact been realized. If at such meetings all the members of the board were present, then whether the notice required was given, of course, became immaterial.

But the objection to some of the questions put to the secretary of the board that they called for the conclusion of the witness was well taken. Ordinarily, there is little harm to be apprehended from answers to such questions as were objected to here. But the defense in this case is, in every aspect of it, technical in the extreme, and we approve the course of a trial court in a case where a defense, as here, is founded entirely upon technicalities behind which there is little substance, in holding counsel who are engaged in making such a defense down to the strictest letter of the rule governing the admission and exclusion of testimony. We make this observation with no intention of challenging the right of counsel to make such a defense if they choose to do so, or believe the exigencies of their cause require it. The defense here, as we have thus far considered the case, is based altogether upon alleged slight departures from the strict letter of the law governing the organization of reclamation districts, and we think that the great purpose of those districts—a purpose in which the state as well as the owners of land embraced therein are vitally interested, because the reclamation of the large areas of swamp and overflowed lands within the borders of this commonwealth means increased prosperity to the whole state—should not be circumvented or impeded by any mere omission to dot an "i" or cross a "t." For the result of a reversal of the judgment in an action of this character, the law by which it is authorized being in all respects valid, because of slight deviations from the procedure by which the assessment is required to be levied, could only be to cause the extra expense to the land owners necessarily incident to levying the assessment again, and for this reason, among those stated, a departure from the prescribed procedure should be of a very material and substantial nature before a reversal of the cause should be ordered. We, therefore, think that a substantial compliance with the provisions of the law governing the organization of such districts and the administration of their affairs ought to be all that should be required, for, unlike municipal corporations, they are brought into existence to serve, as public agencies, a special purpose for the whole state and to pass out with the achievement of that purpose.

4. It is next contended that the evidence discloses that the assessment commissioners were not disinterested persons. This contention is based upon testimony showing that the wife of Commissioner McRae was the holder of a mortgage on certain lands situated in the district.

Section 3456 of the Political Code provides that the three commissioners appointed by the board of supervisors to assess the lands constituting the district shall be "disinterested persons." McRae testified that the mortgage referred to was given to secure the loan of money acquired during marriage, but that he gave the money to his wife so that she could make the loan and thus prevent, by reason of that transaction, his disqualification to serve as an assessment commissioner of the "Sacramento Drainage District."

The point is, however, devoid of merit. The mortgage was executed some three weeks after McRae had been selected by the board of supervisors as one of the assessment commissioners of plaintiff, and conceding, without deciding, that a mortgage held by the wife of a commissioner on lands within the district for which he was appointed a commissioner would be a sufficient reason for his disqualification, or would remove him from the class of "disinterested persons" from which the assessment commissioners must be selected, we do not think that the assessment can be affected or disturbed by that circumstance.

There is no inhibition in the statute authorizing the appointment of these commissioners or in any part of the law relating to the organization and management of reclamation districts against a majority of such commissioners performing the duty required of them. Section 15 of the Political Code provides that "words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority." Prior to the adoption of the foregoing section the rule was the reverse, but the rule now is that, in the absence of an express provision to the contrary, "for all practical purposes the majority becomes the full board. It is," as is said in *People* v. *Hecht*, 105 Cal. 627, [45 Am. St. Rep. 96, 38 Pac. 941], "the receptacle—the reservoir—of all the authority conferred upon the whole, and its action, it is submitted, cannot be stayed

by the nonaction, failure to qualify, absence, death, or want of eligibility of the minority.''

Moreover, the office of assessment commissioner is created by the statute, and is a *de jure* office. When McRae was appointed and qualified as an assessment commissioner and participated in the performance of the duties of the commissioners, he was acting under color of office and presumptively entitled to the office and to discharge its duties. He was a *de facto* officer engaged in the discharge of the duties of a *de jure* office, and as such his acts were as valid and binding as those of a *de jure* officer. (*People* v. *Hecht,* 105 Cal. 627, [45 Am. St. Rep. 96, 38 Pac. 941]; *Kitts* v. *Superior Court,* 5 Cal. App. 462, [90 Pac. 977].) An interesting case upon the subject of officers *de facto* is that of *State* v. *Carroll,* 38 Conn. 449, [9 Am. Rep. 409], where it is said: ''A definition sufficiently accurate and comprehensive to cover the whole ground must, I think, be substantially as follows: An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons where the duties of the office were exercised: . . . 3. Under color of a known election or appointment, void because the officer was not eligible, . . . such ineligibility . . . being unknown to the public.'' (See, also, *People* v. *La Rue,* 67 Cal. 526, [8 Pac. 84].)

It will further be observed that *at the time* of McRae's appointment as commissioner by the board of supervisors he was, so far as the mortgage to his wife might have affected his qualifications to serve as such, a ''disinterested person.''

5. The claim is urged that the commissioners, in making the assessment, failed to take into consideration ''the quality and grade of the lands of the district in fixing the assessments, and had nothing before them to show the relative heights of the land.''

Section 3456 of the Political Code provides that the commissioners ''must view and assess upon the land situated within the district a charge proportionate to the whole expense and to the benefits of which will result from such works,'' etc. It is thus to be seen that the duty of the commissioners is to make an estimate of the whole expense of the proposed reclamation works, and then assess the lands embraced in the

district proportionate to the whole expense thereof and accord-
ing to the benefits which will result to each parcel of land
from such reclamation. It is clear that the statute contem-
plates that considerable discretion shall be exercised by the
commissioners in the determination of the question as to bene-
fits which will accrue to the several tracts of land included
in the district. By this we mean to say that, while an arbi-
trary assessment cannot be levied, the judgment of the com-
missioners upon the assessment, after a view of the land as
contemplated by the statute, must be presumed to have been
the result of a consideration of all the elements necessary to
a just apportionment of the assessment. In fact, section 2463
of the Political Code so provides. It reads as follows: ''From
and after the filing of the list or certified copy thereof, the
charges assessed upon any tract of land within the county
constitute a lien thereon, and in any action to enforce said
lien or to determine its validity, said list, duly executed by
said commissioners, or a certified copy thereof, shall be *prima
facie* evidence of the matters therein contained, and that
said commissioners were duly appointed and qualified, as re-
quired by law, and that they did view and assess upon the
lands set forth in said lists the charges therein contained,
and that said charges are in proportion to the whole expense
and the benefits of which will result from the works of rec-
lamation for which said assessment is so levied.''

In other words, after the assessment list or a certified copy
thereof has been filed, the presumption is that the assessment
was apportioned in obedience to the law. Therefore, when
the plaintiff introduced in evidence the assessment-book, a
*prima facie* case was thereupon made out in favor of the lien
against the lands of the appellants, and the burden was then
cast upon the latter to overcome, if they could, the presump-
tion thus arising.

McRae, one of the commissioners, was examined as to the
methods of levying the assessment adopted by the commis-
sioners, and other testimony was received bearing upon the
character of the land of the appellants as to elevation and
other elements which should be considered in properly ap-
portioning an assessment for reclamation purposes. McRae,
among other things, said that the land of appellants was

11 Cal. App.—27

assessed according to "the benefit it derived from the district, the lands and the drainage." Testimony was offered by the appellants to show that the land involved here was peculiarly suitable and adapted to the culture and growing of prunes, and some of the witnesses testified that the effect of water flowing upon lands of the same quality was to enrich it for prune-producing purposes, to which it could well be devoted where the water could be drained off in the winter season. The purpose of this testimony was, obviously, to show that the land of appellants could derive no practical benefit whatsoever from reclamation, and that any assessment levied thereon for reclamation purposes should not be sustained. But the question whether the land will or will not be benefited by reclamation works, or, in other words, whether it should have been included within the boundaries of a district formed for reclamation purposes, is one which cannot arise or be urged in a suit of the nature of the one here. The legislature having established the boundaries of the district and embraced therein the land of the appellants, it must be conclusively presumed, *in an action to enforce the collection of the assessment,* that such land *will be* benefited by reclamation works. If the rule were otherwise, a reclamation district could easily be dissolved or destroyed by the claim and some proof of exemption from assessment of every tract of land therein in a suit to compel the payment of the assessment for the alleged reason that such land would not be benefited by the reclamation schemes authorized by the legislature.

The ultimate and only question in this respect which it is competent to adjudicate in an action of this character is: Has the assessment been levied as the law prescribes and according to benefits which will result to the land from reclamation works? Viewing, therefore, the testimony presented by the defendants in the light of proof offered as tending to show only the alleged inequality of the assessment levied upon the lands of appellants, all that can be said with regard to it is, that its probative force or value constituted a matter purely and entirely for the determination of the trial court. The court found that the amount of the charge levied upon each and every tract of land in said district was proportionate to the whole expense and to the benefits which would result

from the said works of reclamation, and with this finding we have discovered no reason, after an examination of the record evidence, justifying interference by this court. This finding simply means that the defendants failed to sustain the burden which rested upon them of rebutting the presumption in favor of the validity of the assessment, and we are unable to declare, as a matter of law, that the trial judge was not justified in so finding.

The declaration of counsel that a presumption of law "is an arbitrary rule which does not weigh against evidence taken in opposition thereto" does not harmonize with section 2061, subdivision 2, of the Code of Civil Procedure, which provides that jurors are to be instructed "that they are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds, against a less number, or against *a presumption* or *other evidence* satisfying their minds." "In this," says the supreme court, in the case of *People* v. *Milner,* 122 Cal. 179, [54 Pac. 837], "is a distinct recognition of the facts: 1. That a presumption is evidence; and 2. That it is evidence which may *outweigh* the positive testimony of witnesses against it. . . . Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still *remains with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption."* (Italics ours.)

As we have seen, McRae testified that the land of defendants, as were all the lands in the district, was assessed proportionate to the whole expense of the reclamation works and to the benefits which would accrue to said land therefrom, and, while this statement might be said to be a conclusion of the witness, the testimony thus brought out was by the defendants themselves, they having made McRae their witness, and they, therefore, are bound by his statements. In any event, as already declared, it was for the court to say, after listening to the testimony directly from the witnesses themselves, whether the presumption of the legality of the assessment had been dispelled.

6. Appellants declare that the court erred to their prejudice by refusing to adjourn the trial of the case until they could produce as a witness one Blackmar, who, so alleges the affidavit upon which the motion for the continuance was made, resided on land adjoining that of the defendants for a period of forty years, and who would have given testimony tending to show that the assessment was not levied in accordance with benefits, "and, in fact, that the defendants' land was not benefited at all by the works of reclamation."

It appears that Blackmar had been subpoenaed, but failed to respond to the process, and was not present when his name was called.

Opposition to the motion was interposed by the plaintiff on the ground that the testimony of Blackmar would be purely cumulative, a large amount of testimony to the same point having already been introduced.

We do not think the court abused its discretion in refusing to grant the motion for a continuance. We cannot say, as against the judgment of the judge who tried the case upon the facts, that any different result would likely have been attained had Blackmar's testimony been received. It is very probable that had that witness testified as appellants claim that he would and no different findings deduced by the court from those crystallized into the judgment from which this appeal is prosecuted, this court would be in no better position than it now finds itself to declare that the finding of the trial court against the evidence offered in opposition to the presumption favoring the legality of the assessment was not warranted.

For the reasons expressed in the foregoing the judgment is affirmed.

Burnett, J., and Chipman, P. J., concurred.